**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2122

RORY C. FLYNN,

Petitioner,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Respondent.

On Petition for Review of an Order of the Merit Systems Protection Board. (DC-1221-14-1124-W-1)

Argued: September 13, 2017                    Decided: December 7, 2017

Before MOTZ, DUNCAN, and WYNN, Circuit Judges.

Petition denied in part, granted in part, and remanded for further proceedings by published opinion. Judge Wynn wrote the opinion, in which Judge Motz and Judge Duncan joined.

**ARGUED:** Rory Christopher Flynn, Silver Spring, Maryland, for Petitioner. Allison Kidd-Miller, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Bruce M. Bettigole, EVERSHEDS SUTHERLAND (US) LLP, Washington, D.C., for Petitioner. Laura Walker, David L. Peña, Laura Cunningham, Office of the General Counsel, UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Washington, D.C.; Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Commercial Litigation Branch,

Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

WYNN, Circuit Judge:

In May 2013, Rory Flynn was fired from his position at the Securities and Exchange Commission ("SEC," or the "Commission"). Flynn claims that his supervisor terminated him in reprisal for raising concerns about his section's alleged chronic inefficiency. Seeking redress under a provision of the Whistleblower Protection Enhancement Act, 5 U.S.C. § 2302(b)(8), Flynn filed suit. An Administrative Judge determined that Flynn had not made any protected disclosures and was thus not entitled to relief. The Merit Systems Protection Board affirmed, and now Flynn petitions this Court for review.

We deny the petition in part, grant in part, and remand for further consideration.

I.

In August 2012, Rory Flynn began work as an Associate General Counsel at the SEC. Flynn had previously spent twelve years in the SEC's Division of Enforcement and then another thirteen years with the Financial Industry Regulatory Authority (and its predecessor). In his most recent position with the Commission, Flynn helmed the Office of General Counsel's Adjudication section. Known simply as "Adjudication," the section primarily assists the Commission in deciding appeals from administrative law judges, self-regulatory organizations, and the Public Company Accounting Oversight Board.

After starting with Adjudication, Flynn became alarmed by what he viewed as an unacceptable backlog in unresolved cases based on his reading of two provisions in the SEC Rules of Practice: Rule 900(a) and Rule 900(b). *See* Informal Procedures and

Supplementary Information Concerning Adjudicatory Proceedings, 17 C.F.R. § 201.900 (2006).[1]

Rule 900(a) provides that, "to the extent possible . . . [o]rdinarily, a decision by the Commission with respect to an appeal . . . should be issued within seven months from the date the petition for review . . . is filed."  17 C.F.R. § 201.900(a).  That said, if "the Commission determines that the matter presents unusual complicating circumstances, . . . a decision . . . may be issued within 11 months."  *Id.*  "[W]hen the Commission determines that extraordinary facts and circumstances . . . so require," it has "discretion" to take even further time to resolve the appeal.  *Id.*  Flynn believed that Adjudication was consistently violating Rule 900(a) by not resolving appeals within the prescribed timelines or obtaining Commission approval for extensions.  According to Flynn, when he began working in Adjudication, approximately one-half of the section's docket did not comply with the guidance set out in Rule 900(a).

Flynn also believed that Adjudication regularly violated Rule 900(b).  Under that rule, if an appeal is not completed within 30 days of the timelines in Rule 900(a), "the General Counsel shall specifically apprise the Commission of that fact" with a report that "shall describe the procedural posture of the case, project an estimated date for conclusion of the proceeding, and provide such other information as is necessary to

---

[1] The current version of Rule 900 became effective on September 27, 2016.  *See* 17 C.F.R. § 201.900 (2016).  An earlier version of Rule 900 was in place at the time of the events giving rise to this case.  Accordingly, all citations to "Rule 900" refer to the earlier version unless otherwise noted.  *See* 17 C.F.R. § 201.900 (2006).

4

enable the Commission to determine whether additional steps are necessary to reach a fair and timely resolution of the matter." 17 C.F.R. § 201.900(b). Although Adjudication filed Rule 900(b) reports, Flynn believed the reports failed to provide all information required by the rule.

Regarding both rules, Flynn believed the Commission was violating mandatory directives. Thus, beginning in October 2012, Flynn informed numerous individuals of his concerns regarding Rule 900 compliance. These efforts included a January 2013 meeting with then-SEC Chairwoman Elisse Walter. Flynn also attempted to fix the purported violations by having Adjudication institute a number of remedies, such as hiring additional staff and establishing a triage system, through which Adjudication resolved simple cases first. According to Flynn, these measures improved efficiency.

Continuing these efforts, in May 2013, Flynn scheduled a meeting with the new SEC Chairwoman, Mary Jo White—a meeting at which Flynn intended to discuss his ongoing concerns about Rule 900 violations. Four days beforehand, however, White's office canceled the meeting, and days later, Flynn's supervisor, Michael Conley, fired Flynn. Conley's stated reasons for firing Flynn included "poor work performance," "fail[ure] to produce high quality work product on a timely basis," "failure to prioritize assignments," and "inability to work cooperatively with senior level managers." J.A. 303

Flynn then initiated a lengthy administrative process to adjudicate his termination under the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq*., which sets forth the "framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). Previously, the United States Civil Service

5

Commission managed the personnel of the Executive branch and adjudicated grievances filed by those employees. *See* Robert G. Vaughn, *The Opinions of the Merit Systems Protection Board: A Study in Administrative Adjudication*, 34 ADMIN. L. REV. 25, 26 (1982). Amidst criticism of those conflicting roles, Congress sought to divide the managerial and adjudicatory functions of the Civil Service Commission. *See id.* at 26–29. Under the Civil Service Reform Act, the Office of Personnel Management inherited the Civil Service Commission's managerial duties, and the Merit Systems Protection Board became a separate adjudicatory body. *See id.*; *see also* 5 U.S.C. §§ 1101–05 (establishing the Office of Personnel Management); 5 U.S.C §§ 1201–06 (establishing the Merit Systems Protection Board). The newly established Office of Special Counsel also took on some oversight responsibilities, especially investigating governmental violations of law. *See* 5 U.S.C §§ 1211–19.

Pursuant to the procedure set forth in current law, Flynn first sought "corrective action from the [Office of] Special Counsel." 5 C.F.R. § 1209.2(b)(1) (2013). In his complaint to the Office of Special Counsel, Flynn claimed the SEC engaged in a prohibited personnel action, namely firing him for bringing attention to Adjudication's longstanding violations of Rule 900. The Office of Special Counsel did not pursue Flynn's claims, thereby enabling him to file an independent right of action with the three-member Merit Systems Protection Board ("the Board"). *See* 5 U.S.C. § 1214(a)(3).

Flynn's action was first reviewed by an Administrative Judge, who determined Flynn had not made any disclosures covered by Section 2302(b)(8) and thus denied him relief. Flynn appealed to the Board which at the time had only two of its three members.

6

Because the two members could not agree on an outcome, the Administrative Judge's decision became final pursuant to governing regulations. *See* 5 C.F.R. § 1200.3(b) (1994). Thus, Flynn's appeal from the Board's decision is, in effect, an appeal from the Administrative Judge's decision.

Before December 2012, putative whistleblowers could appeal Board decisions only to the U.S. Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1)(A). One exception enabled litigants to file in other courts: a "mixed case"—that is, a case alleging both a prohibited personnel action and discrimination. *Kloeckner*, 568 U.S. at 44–46; *see also* 29 C.F.R. § 1614.302 (2012). But in December 2012, as part of the Whistleblower Protection Enhancement Act, Congress allowed appellants from Board decisions to file—for a five-year trial period—in any U.S. Court of Appeals with jurisdiction over the case, even if the case did not allege discrimination. *See* 5 U.S.C. § 7703(b)(1)(B). Congress made this change, in part, due to displeasure with how the Federal Circuit handled whistleblower cases. *See* S. REP. NO. 112-155 (2012), at 1–2 (2012) ("Unfortunately, federal whistleblowers have seen their protections diminish in recent years, largely as a result of a series of decisions by the United States Court of Appeals for the Federal Circuit, which has exclusive jurisdiction over many cases brought under the Whistleblower Protection Act (WPA). Specifically, the Federal Circuit has wrongly accorded a narrow definition to the type of disclosure that qualifies for whistleblower protection." (internal citation omitted)). Thus, whereas whistleblowing jurisprudence is well established in the Federal Circuit's case law, this case presents a matter of first impression in this Circuit.

7

II.

At its core, whistleblowing involves "the making of a protected disclosure." 5 C.F.R. § 1209.4(b). Federal law prohibits certain agency actions in response to receiving such disclosures from whistleblowers. *See* 5 U.S.C. § 2302. Relevant here, a federal agency cannot take—or fail to take—"a personnel action" due to

> any disclosure of information by an employee . . . which the employee . . .
> reasonably believes evidences
> (i) any violation of any law, rule, or regulation, or
> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or
> a substantial and specific danger to public health or safety . . . .

5 U.S.C. § 2302(b)(8).[2] As part of these safeguards, an agency cannot fire an employee for making a protected disclosure. *See* 5 U.S.C. § 2302(a).

When a whistleblower claims an agency took an impermissible personnel action, the Merit Systems Protection Board evaluates the case using a burden-shifting framework. First, the employee must establish a prima facie case by demonstrating four facts: "(1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action." *Chambers v. Dep't of Interior*, 602 F.3d 1370, 1376 (Fed.

---

[2] Additionally, the statute protects a whistleblower only if her disclosure "is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs." 5 U.S.C. § 2302(b)(8).

8

Cir. 2010); *see also* 5 U.S.C. § 2302(b)(8); S. REP. NO. 112-155, at 6 (stating that the Whistleblower Protection Enhancement Act "does not affect" certain Federal Circuit doctrine, including the elements of a prima facie case and the burden-shifting framework). The petitioner bears the burden of proof by a preponderance of the evidence. *See* 5 C.F.R. § 1209.7(a). If the petitioner establishes a prima facie case, the burden shifts to the agency to show "by clear and convincing evidence that it would have . . . taken . . . the same personnel action in the absence of the disclosure." 5 C.F.R. § 1209.7(b); *accord Chambers*, 602 F.3d at 1376.

Here, the Administrative Judge concluded that Flynn failed to satisfy the second prong of his prima facie case—that is, Flynn did not make any protected disclosures. Based on that finding, the Administrative Judge denied Flynn's request for corrective action.

On appeal, Flynn raises three issues. First, he argues the Administrative Judge erred in concluding that Flynn's Rule 900(a) disclosures were not protected. Second, Flynn makes a parallel argument for Rule 900(b)—that his disclosures regarding those violations were also protected. Finally, Flynn contends that the Administrative Judge imposed several inappropriate procedural limitations, including curtailing the number of evidentiary exhibits Flynn could admit and denying extensive discovery.

We review each of these arguments in turn. Our review of the decision below is limited, however. We may only set aside agency actions, findings, or conclusions if they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

9

law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## A.

Flynn's first argument centers on his attempts to bring to light Adjudication's alleged noncompliance with Rule 900(a). The Administrative Judge concluded Flynn's "disclosures, even if taken as true, fail to meet the standard for being protected disclosures under the law." J.A. 350. The standard referenced by the Administrative Judge is the one introduced earlier: disclosures are protected if they are information "which [an] employee . . . reasonably believes evidences . . . any violation of any law, rule, or regulation." 5 U.S.C. § 2302(b)(8). In evaluating Flynn's case, the Administrative Judge treated the phrase "law, rule, or regulation" as referring to provisions that bind an agency. Thus, concluding that Rule 900(a) could not possibly be interpreted as binding, the Administrative Judge said the provision "constitute[d] internal guidelines and policy," rather than a rule or regulation. J.A. 347. Accordingly, the Administrative Judge found Flynn could not have reasonably believed his disclosures were about violations of a rule or regulation. At the outset, it is worth noting that reviewing the Administrative Judge's conclusion on this issue presents two separate, but related, inquires. First, we must decide whether Rule 900(a) is a "law, rule, or regulation" as Congress used that term in Section 2302(b)(8). If so, then we must decide whether Flynn had a reasonable belief the information he disclosed "evidences . . . any violation" of that law, rule, or regulation. 5 U.S.C. § 2302(b)(8).

10

As to the first question—whether Rule 900(a) is a "law, rule, or regulation"—the statute does not define any of those three terms. The Supreme Court recently held that the word "law" in Section 2302(b)(8) refers specifically to statutes, *see Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 918–21 (2015), meaning that Rule 900(a) does not constitute a "law." Whether Rule 900(a) is a "rule" or "regulation" is a more difficult question.

Although the Whistleblower Protection Enhancement Act does not define "rule," the Administrative Procedure Act defines the term as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). Under that expansive definition—which would accord with Congress' intent to "broad[ly]" protect individuals who disclose wrongdoing—Rule 900(a) would seem to qualify as a "rule." *See* S. REP. NO. 112-155, at 5 ("[The Whistleblower Protection Enhancement Act] makes clear, once and for all, that Congress intends to protect 'any disclosure' of certain types of wrongdoing in order to encourage such disclosures. It is critical that employees know that the protection for disclosing wrongdoing is extremely broad . . . ."). We need not resolve this unsettled question, however, because the parties agree that Rule 900(a) falls within the ambit of Section 2302(b)(8), albeit on different theories. *See* Petitioner's Br. at 44 (arguing that Rule 900 is a "rule"); Respondent's Br. at 23 n.9 ("Rule 900 is a regulation, 17 C.F.R. § 201.900, not a separate 'rule' as that term is used in the phrase 'law, rule, or regulation' in 5 U.S.C. § 2302(b)(8).").

11

Because the parties agree Rule 900(a) falls within the scope of Section 2302(b)(8), we next must determine "whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee . . . could reasonably conclude that the actions of the Government evidence" a violation of Rule 900(a). 5 U.S.C. § 2302(b). We find that a disinterested observer could not reasonably conclude the Commission violated Rule 900(a). In particular, the plain language of Rule 900(a) shows that the relevant aspects of the provision are aspirational and discretionary, such that a failure to strictly adhere to them could not reasonably be seen as a "violation."

To elaborate, we turn to the Administrative Judge's opinion, which is well reasoned on this point. The Administrative Judge quoted the text of Rule 900(a) in its entirety and underlined specific words indicating the provision did not actually create any mandatory deadlines. The rule is replete with such language. For example, as the Administrative Judge noted, Rule 900(a) sets forth "*[g]uidelines* for the timely completion of proceedings." J.A. 345. Rule 900(a) also states that appeals "*should* be completed" or "*should* be issued," "to the extent possible," within the timeframes set forth in the rule. *Id.* (emphasis added). Additionally, the provision allows the Commission to exercise "discretion to take additional time" beyond the established timelines. J.A. 346. The text specifically "do[es] not create a requirement that each portion of a proceeding or the entire proceeding be completed within the periods described." *Id.* Rather, Rule 900(a) encourages "fairness" by ensuring the SEC's "deliberative process is not constrained by an inflexible schedule." *Id.* The Administrative Judge highlighted all these points.

12

The Administrative Judge also discussed the Commission's 2003 amendments to Rule 900(a). In making those amendments, the Commission moved certain guidelines from Rule 900 to a different location—Rule 360—which sets forth mandatory timelines within which administrative judges "shall" render their initial decisions. J.A. 347; *see also* 68 Fed. Reg. 35787–89 (June 17, 2003) (explaining the 2003 amendments to the SEC Rules of Practice). Notably, as the Administrative Judge indicated, the 2003 amendments did not change Rule 900(a)'s advisory language.

Thus, although Rule 900(a) sets timelines by which the Commission would ideally adjudicate cases, the permissive language of the text could not lead an employee to reasonably conclude that failing to meet such aspirational guidelines would amount to a "violation." We reach this decision despite Flynn's reference to various interactions he had with individuals at the Commission, which he maintains bolstered his belief Rule 900(a) created mandatory deadlines. The facts Flynn cites are at best disputed, but even if taken as true, they do not outweigh the textual analysis that would inform the viewpoint of an objective observer. More importantly still, our standard of review is very deferential. The Administrative Judge more than adequately explained why, under the facts presented by the parties, an employee in Flynn's position could not have reasonably concluded Rule 900(a) was violated. Thus, the Administrative Judge did not err in rejecting Flynn's Rule 900(a) claim.[3]

_____

[3] Flynn also argues on appeal that violation of Rule 900(a) evidenced "gross mismanagement," a second way to classify his statements as protected disclosures. *See* 5 U.S.C. § 2302(b)(8). Flynn has affirmatively waived this argument, however. The (Continued)

13

B.

Flynn also claims he made protected disclosures when he raised concerns that Adjudication violated Rule 900(b). Specifically, Flynn believed the status reports submitted by Adjudication provided insufficient detail to satisfy the rule's requirements. We do not believe the Administrative Judge actually analyzed this claim, which leaves the opinion below lacking, even under our deferential standard of review.

The Commission appears to have acknowledged this error before the Board when it argued that "[a]ny error the AJ made in not specifically addressing Rule 900(b) can be resolved by the Board on review." J.A. 371. Nonetheless, on appeal to this Court, the government contends that the Administrative Judge adequately considered Flynn's Rule 900(b) claim by citing several parts of the Administrative Judge's opinion. For example, the Administrative Judge quotes the Office of Special Counsel's summary of Flynn's claims, including that Adjudication "failed to give the Commission specific information in the semi-annual status reports to enable it to determine whether additional steps were

Administrative Judge found that, as an alternative holding, the alleged Rule 900(a) violations did not evidence gross mismanagement. In his petition for review before the Board, Flynn specifically criticized the Administrative Judge for doing so and argued that the judge erred in evaluating Flynn's claims under the wrong prong of the statute. Flynn went so far as to say that, "[t]here has never been any question that Mr. Flynn's disclosures concern rule violations—specifically, violations of SEC Rule of Practice 900(a)(1)(iii) and (b). Yet the AJ analyzed the case as one involving 'gross mismanagement . . . .'" J.A. 365; Pet. for Rev. by MSPB at 20–21. Because Flynn affirmatively chose to abandon this argument below, it is waived before this Court. *See Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994) ("[I]t is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved.").

necessary to reach a fair and timely resolution of matters, as required by Rule 900(b)." J.A. 340. The Administrative Judge also found that, by raising this claim before the Office of Special Counsel, Flynn exhausted his remedies in the way required to seek redress from the Board. The Administrative Judge then gave his own summary of Flynn's Rule 900(b) allegations, which he described as follows: Flynn "pointed to Rule 900(b) as a mandatory directive that [Adjudication] 'shall advise the commission' on the procedural posture of each case" but Flynn believed that the reports filed "lacked a lot of required information." J.A. 341–42. Later in the opinion, when the Administrative Judge quoted Rule 900(a) in its entirety, he also quoted Rule 900(b) in full. At that point, however, the specific references to Rule 900(b) cease.

Based upon these scant details in the opinion regarding Rule 900(b), Flynn argues that the Administrative Judge never actually addressed his claim. We agree.

Nothing in the decision below indicates the Administrative Judge *analyzed* Flynn's Rule 900(b) claim. Outside the brief factual recitation of the nature of the 900(b) claim, the Administrative Judge's decision focuses solely on matters related to Rule 900(a). And although the Administrative Judge quoted Rule 900(b) in full, he did not engage with the text of the provision. For example, whereas the Administrative Judge underlined sections in the quoted version of Rule 900(a) to emphasize "the words significant to making a determination of its mandatory nature," J.A. 345, he did not underline any portion of Rule 900(b), and any quoted material in the subsequent discussion came solely from Rule 900(a).

15

This error is even clearer when the Administrative Judge's reasoning is examined in detail. When explaining why Flynn's disclosure did not address a "violation" of Rule 900(a), the Administrative Judge emphasized the Commission's actions when it amended the provision in 2003. Specifically, the Commission took other "guidelines" previously found in Rule 900 that applied to Administrative Law Judges and "ma[de] them mandatory" by adding the word "shall." J.A. 347. The Commission then moved the newly mandatory provisions into a separate section—Rule 360—but kept the remaining permissive "guidelines," like those set forth in Rule 900(a), in the current regulation. *Id.* Unlike the new provisions in Rule 360, Rule 900(a) maintained its more aspirational language, as evidenced by "repeated use of the word 'should.'" *Id.* The Administrative Judge concluded—and we agree—that use of the term "should" rather than "shall" provides evidence the Commission intended Rule 900(a) to be aspirational rather than binding. *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (stating that the "mandatory" word "shall" is one that "normally creates an obligation impervious to judicial discretion")).

Significantly, however, the Administrative Judge did not engage in any similar analysis with regard to Rule 900(b), which uses "shall" three times without ever using more permissive language, such as "may" or "should." 17 CFR § 201.900(b). This omission only solidifies our conclusion that the Administrative Judge did not consider Flynn's Rule 900(b) claim. Accordingly, we find the Administrative Judge's conclusion regarding Rule 900(b) cannot stand, even under our deferential standard of review. *See* 5

16

C.F.R. § 1201.111(b) (requiring that the Administrative Judge's initial decision "contain . . . [f]indings of fact and conclusions of law upon all the material issues of fact and law presented"); *see also* 5 U.S.C. § 7703(c) (requiring decisions be supported by "substantial evidence").

That conclusion leaves us with the question of what to do with this case. We believe we should follow the guidance set out in *Patterson v. Commissioner of Social Security Administration*, 846 F.3d 656 (4th Cir. 2017). In that case, we acknowledged we could use a harmless error approach in reviewing some agency determinations but nonetheless declined to do so. *See id.* at 662. Instead, we found it more appropriate to remand, so the agency could more fully develop the record on contested issues. *See id.* at 662–63. We believe that is a prudent result for this case, as well. Making a fully informed decision on this issue will require evaluating much evidence and perhaps developing a more robust record. The Administrative Judge is in the best position to interpret this evidence in the first instance and to allow for further record development as needed.

C.

Finally, Flynn requests that this Court address a number of purported evidentiary and discovery issues. In particular, Flynn asserts that the Administrative Judge erred by failing to make credibility findings, excluding exhibits Flynn sought to admit, and refusing to compel discovery regarding "similarly situated, non-whistleblowing employees who were not disciplined." Petitioner's Br. at 64.

17

Notably, all of the evidentiary and discovery issues that Flynn raises relate to the second part of the burden-shifting framework: whether the agency can prove by clear and convincing evidence that it would have taken the same personnel action absent the employee's protected disclosure. *See* 5 C.F.R. § 1209.7(b). There is no evidence that any of the alleged discovery or evidentiary errors affected the one conclusion the Administrative Judge reached: that Flynn's disclosures were not protected within the meaning of Section 2302(b)(8). Because the alleged procedural errors had no bearing on the outcome of the issue presently appealed, we decline to address them at this time. On remand, the Administrative Judge will need to reevaluate whether Flynn established a prima facie case in regards to his Rule 900(b) disclosures. If Flynn succeeds in doing so and the burden shifts to the agency, the Administrative Judge may revisit Flynn's requests on these issues.

## III.

For the foregoing reasons, the petition for review is

*DENIED IN PART, GRANTED IN PART, AND*
*REMANDED FOR FURTHER PROCEEDINGS.*