**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2395

WALTON B. CAMPBELL,

Plaintiff - Appellant,

v.

CHRISTINE WORMUTH, Secretary of the Army,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:18−cv−01250−RDA−JFA)

Submitted: September 6, 2022                    Decided: December 27, 2022

Before WYNN and HARRIS, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Richard R. Renner, Sarah Martin, KALIJARVI, CHUZI, NEWMAN & FITCH, P.C., Washington, D.C., for Appellant. G. Zachary Terwilliger, United States Attorney, Lauren A. Wetzler, Chief, Civil Division, Alexandria, Virginia, Sean D. Jansen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, a federal employee challenges the district court's award of summary judgment to his employer on claims that the employee was terminated in retaliation for protected activities, in violation of several statutes. After reviewing these claims and the record before us, we affirm the district court's judgment.

I.

From July 27, 2004, until his termination on February 9, 2017, Walton Campbell worked for the United States Army Corps of Engineers (the Army) at a research lab in Alexandria, Virginia. Beginning in July 2012, Campbell worked as a physical scientist in the Geospatial Applications Branch (GAB). Todd Sims, the GAB chief, served as Campbell's first-level supervisor, and Martha Kiene, the research division chief, served as Campbell's second-level supervisor.

Sims recommended to Kiene in January 2017 that Campbell be terminated from his employment. Sims provided five reasons for this recommendation, namely, one charge of failing to execute a work assignment, one charge of failing to follow procedures for taking leave from work, and three charges of conduct unbecoming a federal employee.[1] We describe the events underlying these charges and Campbell's response to each charge.

First, Sims charged Campbell with failing to complete a work assignment. In October 2014, Sims and Kiene determined that the GAB needed an additional contracting

---

[1] We state the facts in the light most favorable to Campbell, the non-moving party. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

officer's representative (COR) for certain projects. Sims directed Campbell to take steps necessary to become "COR-certified" within six months, by completing an online fiscal law course with four "modules" and by passing a fiscal law examination. According to Sims and Kiene, the process to become COR-certified could be completed in about two weeks, and every employee who had undertaken to achieve such certification had done so.

Campbell had not taken the examination before the end of the six-month deadline. Sims extended Campbell's deadline two times, but Campbell completed only one of the four required modules over an eight-month period. Based on this conduct, Sims proposed, and Kiene agreed, to suspend Campbell from service for three days. After the suspension, Campbell did not comply with another extended deadline to become COR-certified, although he ultimately took and failed the final examination three times. As a result of Campbell's failure to become COR-certified, Sims proposed a 14-day suspension, which Kiene approved. In response to the charge of failure to comply with a work assignment, Campbell stated that he was not given sufficient time, and that such certification fell outside his job responsibilities.

Next, Sims charged Campbell with failure to follow "leave" procedures. In December 2016, Sims had requested an update from Campbell regarding his COR certification progress. Campbell responded via email that Sims had approved Campbell to use "earned annual leave" for three days in late November and that, therefore, his failure to provide a timely progress update was justified. Sims disagreed with this assertion, stating that Campbell had not submitted a "leave request" for those three days. Campbell

3

later apologized for his failure to submit a request for leave and stated that his error was inadvertent.

Sims also charged Campbell with conduct unbecoming a federal employee based on Campbell's report that his laptop had been stolen (the computer incident). In June 2016, Campbell experienced technical difficulties with both his laptop and a second "loaner laptop." In response, the information technology department (IT) removed the loaner laptop from Campbell's office for repair.

Because Campbell was not present when the laptop was removed, Sims asked another employee, Abdirahman Ali, to inform Campbell that the loaner laptop was being repaired by employees in IT. After Ali verbally delivered this message, Campbell responded to Ali that he did not need his loaner laptop that day. Ali relayed a written message to Sims confirming Ali's message to Campbell.

Four days later, according to records kept by the relevant security department, after Campbell reported that his loaner laptop was "missing/stolen," the security department labeled Campbell's report as an alleged "larceny." In response, a military police officer confronted Sims "as a person who may have been involved." Sims explained that IT personnel had taken Campbell's loaner laptop, which fact the military police officer later confirmed. In response to the computer incident charge, Campbell stated that he had not accused Sims of stealing the computer.

The next charge of conduct unbecoming a federal employee involved Campbell's interaction with a new coworker, Imes Chiu (the coworker incident). According to Chiu's report filed with her supervisors, on November 2, 2016, at 6:30 a.m., Campbell entered

4

Chiu's office and warned her to be "careful with the 'people in the building'" who were "conspiratorial" and could "harm" her. Chiu also stated that Campbell told her that he was "involved in a 'multi-million' dollar 11-year lawsuit with 'this building' due to [his] salary [being] withheld several years ago." Also, Campbell described the work environment as "corruption running up and down the chain," and suggested that Sims had given Campbell an "impossible task" in order to pressure Campbell to commit suicide. Chiu, who previously had not met Campbell, stated that she was "extremely uncomfortable" and "felt trapped" because Campbell had blocked the doorway to her office. In response to this charge of conduct unbecoming of a federal employee, Campbell asserted that his interaction with Chiu was not inappropriate and qualified as a "protected activity."

The final charge of conduct unbecoming a federal employee involved Campbell's failure to submit a required "timesheet" (the timesheet incident). On November 3, 2016, a management assistant asked all members of the GAB to submit their timesheets. In response, Campbell stated that he had been instructed to do no work other than prepare for the fiscal law examination and requested clarification regarding whether he was required to submit the timesheet. Sims directed Campbell to enter his timesheet, but Campbell did not comply. In response to the timesheet incident charge, Campbell stated that he had difficulty preparing the document, and that it was common for the management assistant to complete timesheet requirements for branch employees.

Based on these collective events, Sims submitted to Kiene a notice of proposed removal to terminate Campbell from his employment. Campbell was permitted to submit a written response. He asserted generally that any such termination would constitute

5

unlawful retaliation for his "protected activities" and "whistleblowing." Campbell additionally identified as protected activities two earlier complaints he had filed with the Equal Employment Opportunity Commission (EEOC) in 2005 and 2015 (the EEO activity, or EEO complaints).[2]

On January 27, 2019, after reviewing Campbell's written response to the charges, Kiene upheld Sims' proposal to terminate Campbell from service. Following his termination from service, Campbell filed an appeal to the Merit Systems Protection Board (MSPB) arguing that his termination unlawfully was based on retaliation. After conducting a hearing, the MSPB later affirmed the Army's termination decision. Campbell appealed this decision to the EEOC Office of Federal Operations, which concurred in the MSPB's ruling.

In 2018, Campbell filed the present action in federal district court against the former Secretary of the Department of the Army, Mark Esper, alleging that (1) Campbell was unlawfully terminated based on retaliation for engaging in EEO activity, in violation of

---

[2] In 2005, Campbell filed an EEO complaint asserting a claim of sex and age discrimination after his then-supervisors had suspended him without pay after an incident that resulted in the suspension of Campbell's security clearance. This complaint ultimately was resolved in favor of the Army in March 2014. Notably, although Campbell had informed Sims and Kiene about the 2005 EEO complaint, they were not involved in the conduct underlying the 2005 complaint.

In 2015, Campbell filed a second EEO complaint challenging his two suspensions for failing to become COR-certified as improper retaliation for his 2005 EEO Complaint. The EEOC ruled in favor of the Army on this complaint, concluding that Campbell "failed to proffer any evidence to establish a nexus between his protected prior activity and any of his claims."

Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2 *et seq.* (Title VII), and the Age

Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (ADEA),[3] and that (2) the

Army engaged in retaliation in violation of the Whistleblower Protection Act, 5 U.S.C.

§ 2302 (WPA).[4]   The Army moved for summary judgment, which the district court

granted.[5]  Campbell timely filed this appeal.

## II.

## A.

We first consider the district court's ruling in favor of the Army on Campbell's

claims of retaliation under Title VII and the ADEA.  We review the district court's award

of summary judgment on these claims de novo.  *RXD Media, LLC v. IP Application Dev.*

---

[3] Campbell also alleged that the Army acted in retaliation by assigning him administrative work and subjecting him to progressive discipline.  Upon our review of the record, we conclude that these actions by the Army were not pretext for retaliation.

[4] Campbell also alleged a claim of retaliation under the Civil Service Reform Act, 5 U.S.C. § 1221 (CRSA).  The district court awarded the Army summary judgment on that claim, and Campbell does not challenge the merits of that decision on appeal.  Therefore, we do not address further Campbell's CRSA claim.

[5] Campbell moved for partial summary judgment on his WPA claim and included a basis not raised before the MSPB, namely, his request for "official time" to pursue his EEO activity and the issuance of a letter of reprimand.  The district court denied the motion, concluding that this claim failed for several reasons, including that Campbell was reprimanded for failing to follow proper procedures to request leave time, despite numerous instructions, and was not reprimanded for any protected activity.  Upon our review of the record, we agree with the district court's conclusion.

*LLC*, 986 F.3d 361, 372 (4th Cir. 2021).  Summary judgment is appropriate when a court, viewing the evidence in the light most favorable to the nonmoving party, determines that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004).  A court will award summary judgment unless a jury reasonably could find in favor of the nonmoving party based on the evidence presented.  *Honor*, 383 F.3d at 185.

Under Title VII, it is unlawful for an employer to discriminate against any federal employee on the basis of sex.  42 U.S.C. § 2000e-16(a).  Similarly, the ADEA provides that personnel actions affecting federal employees who are at least 40 years of age must be "free from any discrimination based on age."  29 U.S.C. § 633a(a).  Though not explicitly stated, both Title VII and the ADEA also prohibit retaliation against federal employees who have made complaints of sex or age discrimination.  *See Gomez-Perez v. Potter*, 553 U.S. 474, 479, 481 (2008); *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011).

Campbell proceeded under the burden-shifting proof scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  Under that framework, a plaintiff first must establish a prima facie case of retaliation.  *See Texas Dep't Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981); *Lettieri v. Equant Inc.*, 478 F.3d 640, 646-49 (4th Cir. 2007).  After the plaintiff has met this evidentiary burden, the burden of production shifts to the employer to set forth a legitimate nonretaliatory basis for the employment action.  *Burdine*, 450 U.S. at 253; *Lettieri*, 478 F.3d at 646, 648.

If the employer satisfies this burden of production, the plaintiff must establish by a preponderance of the evidence that the legitimate reasons offered by the employer are merely pretext for retaliation. *Burdine*, 450 U.S. at 253; *Lettieri*, 478 F.3d at 646, 648. A plaintiff may prove such pretext by demonstrating that the defendant's explanation is "unworthy of credence" and by offering circumstantial evidence that retaliation was the real reason for the adverse personnel action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004); *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853-54 (4th Cir. 2001); *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995). Critically, our role in reviewing the record at this stage is not to discern whether an employment decision was fair or correct, but whether the decision was based on an unlawful motive. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000).

In the present case, we assume without deciding that Campbell established a prima facie case of retaliation. We nevertheless conclude, as explained below, that the district court correctly held that the evidence failed to show that the Army's legitimate, nonretaliatory reasons offered for Campbell's termination were pretext for retaliation based on Campbell's EEO activity.

Campbell challenges the district court's ruling on pretext generally, arguing that the court improperly construed the evidence in the Army's favor. Campbell also cites as evidence of pretext: (1) an email by Sims regarding the "missing" computer in which Sims used the phrase "never ending saga"; (2) Sims' awareness of Campbell's 2005 EEO complaint; (3) Campbell's assignment to become COR-certified despite his advanced

9

degree;  (4) Chiu's possible overreaction during the coworker incident; and (5) the short period of time that Campbell was given to enter his timesheet.[6]  We disagree with Campbell that this evidence would permit a jury to conclude that his supervisors acted in retaliation for his EEO activity when making the termination decision.

Initially, in an email exchange between Sims and an employee in the security department regarding Campbell's "missing" computer, Sims used the phrase "never ending saga."  Construed in Campbell's favor, the phrase reflects frustration on the part of Sims toward Campbell.  But even when considered in conjunction with Sims' awareness that Campbell had filed an EEO complaint of sex and age discrimination in 2005, this evidence showed no connection between Sims' frustration with Campbell and Sims' EEO activity. The 2005 complaint involved prior supervisors, and Campbell himself informed Sims of the previously filed complaint.  Sims' awareness of the complaint is insufficient to permit an inference of pretext.  *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) ("[M]ere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee.").

The record also demonstrated that several other employees with advanced degrees had been required to become COR-certified.  Thus, a jury could not infer any retaliatory

---

[6] We further observe that Campbell made several arguments in his brief that were not presented to the district court.  We do not consider those arguments raised for the first time on appeal. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009). In addition, we have fully reviewed Campbell's brief and reject as meritless his other arguments raised to assert pretext.

animus based on this assignment. And finally, even if a jury construed the evidence to conclude that Chiu had "overreacted" to Campbell's conduct and that Campbell's failure to complete a timesheet occurred because he did not have sufficient time to do so, such evidence does not call into question Campbell's supervisors' motivations for terminating his employment. The record is silent regarding retaliation, the "real reason" Campbell alleges for his termination from service. *Jiminez*, 57 F.3d at 378 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Because Campbell failed to provide any factual basis for asserting pretext, we conclude that the district court did not improperly weigh any evidence or fail to credit contradictory evidence. *See Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). Instead, the district court correctly determined that Campbell failed to present evidence from which a jury could conclude that the Army's stated justifications for terminating Campbell were pretext for retaliation based on Campbell's prior EEO activity.

## B.

We next address the district court's ruling in favor of the Army on Campbell's WPA claim. Although generally we review awards of summary judgment de novo, such review of WPA claims requires a narrower standard, namely, whether the MSPB acted arbitrarily or capriciously, or abused its discretion, in dismissing the whistleblower claim. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265-66 (4th Cir. 2001) (citing 5 U.S.C. § 7703(c)). We must affirm the MSPB decision unless we conclude that its decision was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained

11

without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* at 266 (quoting 5 U.S.C. § 7703(c)).

To establish a prima facie violation of the WPA, a plaintiff must show, among other facts, that he made a protected disclosure. *Flynn v. U.S. Sec. & Exchange Comm.*, 877 F.3d 200, 204 (4th Cir. 2017) (citation omitted). A "protected disclosure" is a disclosure of information by an employee who reasonably believes that there has been "a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Hooven-Lewis*, 249 F.3d at 276 (quoting 5 U.S.C. § 2302(b)(8)). To assess whether an employee's belief is reasonable that his disclosures are protected, we ask whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee" reasonably could have concluded that the government's actions evidenced a violation of law or gross mismanagement. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999); *see Freeman v. District of Columbia*, 60 A.3d 1131, 1141 (D.C. Cir. 2012). The "purely subjective perspective of an employee is not sufficient." *Lachance*, 174 F.3d at 1381.

The MSPB concluded that neither the laptop incident nor the coworker incident qualified as "the type of wrongdoing eligible for whistleblower protection" under the WPA.[7] Campbell challenges this ruling, arguing with regard to the computer incident that

---

[7] The MSPB also made alternative rulings after assuming without deciding that the computer incident and the coworker incident qualified as protected disclosures. Based on our conclusion that Campbell did not reasonably believe that he was reporting a violation of law or gross mismanagement, we do not address those alternative rulings.

12

a reported violation of law necessarily constituted a protected disclosure. Campbell also argues that he was protected in discussing with Chiu his disputes with the Army regarding the withholding of his salary during his prior suspension, which action formed the basis for his 2005 EEO Complaint. We disagree with Campbell's arguments. We conclude that the MSPB's decision was not arbitrary or capricious, and that the decision was supported by substantial evidence.

The MSPB observed that the record showed that Campbell was aware that his loaner laptop had been taken for repair by IT personnel. And, based on testimony and documentary evidence presented at the hearing, the MSPB found that Campbell reported a theft or at least "spoke about the absence" of his computer in a manner suggesting that it had been taken unlawfully. Finally, the MSPB observed that Campbell denied reporting a theft while simultaneously claiming to have reported a violation of law. Based on the record as a whole, the MSPB concluded that Campbell did not reasonably believe that he was reporting a violation of law. Upon our review of the record, we hold the MSPB's conclusion was not arbitrary or capricious and was supported by substantial evidence. *See Hooven-Lewis*, 249 F.3d at 265.

The MSPB also credited Chiu's testimony regarding the coworker incident when she described Campbell's statements as constituting complaints, rather than a report of gross mismanagement. Further, the MSPB stated that Campbell failed to present evidence that he reasonably believed that his managers were "trying to cause him to commit suicide or otherwise harass him." Indeed, Campbell did not assert what information he disclosed to Chiu regarding his supervisors' mismanagement or other misconduct. With regard to

13

his disagreement with the Army underlying his prior suspension, the record shows that Campbell did not report to Chiu any misconduct by the Army but, instead, encouraged her to talk to him away from the office if she wanted to learn more about his dispute. On this record, we agree with the MSPB's conclusion that the vague complaints Campbell made about management were not sufficient for a disinterested observer reasonably to conclude that Campbell disclosed violations of law or gross mismanagement as required for protection under the WPA.

Because the MSPB's conclusion that Campbell did not engage in protected disclosures within the meaning of the WPA was not arbitrary or capricious and was supported by the record, we affirm the district court's award of summary judgment in favor of the Army on Campbell's WPA claim. *See Lachance*, 174 F.3d at 1381.

### III.

Accordingly, we affirm the district court's award of summary judgment to the Army.

*AFFIRMED*