**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-2429**

YURIY B. MIKHAYLOV,

Petitioner - Appellant,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Respondent - Appellee.

On Petition for Review Appeal of an Order of the Merit Systems Protection Board.  (PH-1221-21-0255-W-1)

Argued:  October 27, 2022                         Decided:  March 15, 2023

Before KING and RUSHING, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:**  Morris Eli Fischer, MORRIS E. FISCHER, LLC, Silver Spring, Maryland, for Appellant.  Kelly A. Krystyniak, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Brian M. Boynton, Acting Assistant Attorney General, Patricia M. McCarthy, Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; J. Douglas Whittaker, Office of the Chief Counsel, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, Omaha, Nebraska, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Yuriy Mikhaylov, an employee of the Department of Homeland Security, Immigrations and Customs Enforcement ("ICE" or the "Agency"), petitions for review from the final judgment of the Merit Systems Protection Board (the "Board") rejecting his claims under the Whistleblower Protection Act (the "WPA") that the Agency took adverse personnel actions against him in retaliation for his disclosures of misconduct.[1] Finding no reversible error, we deny the petition for review.

I.

The WPA prohibits a federal agency from taking "a personnel action with respect to any employee" because of the employee's disclosure of information that the employee reasonably believes shows a "violation of any law, rule, or regulation" or "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. §§ 2302(b)(8)(A)(i) & (ii).

To establish a *prima facie* whistleblower claim, the employee must prove by a preponderance of the evidence that:

> (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action.

---

[1]    This case is a companion to the appeal in Case No. 21-1169, *Mikhaylov v. Department of Homeland Security* ("*Mikhaylov I*"), in which Mikhaylov challenges a separate disciplinary action that was initiated shortly before the actions at issue in this appeal. Our opinion in *Mikhaylov I* is also issued today.

3

*Flynn v. United States Sec. & Exch. Comm'n*, 877 F.3d 200, 204 (4th Cir. 2017) (cleaned up). The employee may prove that the protected disclosure was a contributing factor through circumstantial evidence, such as evidence that the personnel action was initiated shortly after the official taking the action learned about the protected disclosures. *See* 5 U.S.C.A. § 1221(e)(1). Even if the disclosure was a contributing factor, however, the employee is not entitled to corrective action if "the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C.A. § 1221(e)(2); *see Flynn*, 877 F.3d at 204.

II.

Mikhaylov has worked for ICE since 1998. In 2018, Mikhaylov was serving as the Assistant Field Office Director for the office in Baltimore, Maryland. Beginning in October 2018, Mikhaylov made a series of disclosures (the "Disclosures") about possible misconduct. The Disclosures are the same disclosures at issue in *Mikhaylov I*: In October 2018, Mikhaylov questioned Janean Ohin, a supervisor in the Baltimore office, about reports that she had ignored a national list of qualified candidates so she could hire her preferred job candidate. In December 2018, Mikhaylov filed a complaint with the Office of Special Counsel. And in April 2019, Mikhaylov reported to his supervisors that an Agency employee had been using an Agency vehicle for personal purposes.

In December 2018, one of Mikhaylov's subordinates—referred to in the record as "KR"—complained to Ohin that Mikhaylov had been sexually harassing and intimidating her for several years. Ohin consulted with her supervisor, Field Office Director Diane Witte, and with the Employee Labor Relations ("ELR") office. At ELR's instruction, Ohin

4

obtained more information from KR and reported the matter to the Joint Intake Committee, as required by Agency policy.

In support of her claims, KR provided copies of emails she had exchanged with Mikhaylov. The emails from Mikhaylov are unprofessional in tone and content, and they demonstrate Mikhaylov's frustrations with issues related to the employee's pregnancy and her needs after the baby was born. For example, after KR sent Mikhaylov an email referring to recent events and asked him to stop insinuating that she was emotional because she was pregnant and to treat her with respect, Mikhaylov responded,

> As usual you are taking everything I say in your own way and always misstating what I do say to fit your picture. . . . I told [you] before and I'm going to say again on the record here -- I NEVER SAID ANYTHING about your pregnancy and never will. I am not that kind of person and do celebrate and welcome new life, to me that's sacred. . . . If you are looking for confirmation of your future allegations about pregnancy discrimination, you are looking in the wrong place. Oh and my exact words were *"Stop accusing me to me, saying what I didn't say and **just go** before I say something and you will cry again"* last part I do regret saying and I apologize, but you really did create a pattern on your own here with that one.

J.A. 104 (emphasis in original).  Later, after the baby was born, KR sent Mikhaylov an email telling him that if her office door is closed, it is often because she is pumping breastmilk. She asked Mikhaylov to knock gently if her door was closed or, preferably, to call or text first. She explained that loud banging on the door startles her, which can cause her milk to stop flowing and interfere with pumping. Mikhaylov's response was not particularly polite or accommodating:

> Pumping?!? That's way too much info I want or need to see in the email [KR]. Especially, when I know I didn't bang[] on your door and always use my fingers to knock on any door. I will try to call next time and summon you to my office instead, but if mission dictates immediate attention, tiptoeing

5

around your door is kind of too much to ask in the law enforcement setting[], don't you think? So is making allegations that regular knocking on your door is inappropriate or somehow wrong.

JA 107.

The Office of Professional Responsibility ("OPR") began an investigation of KR's complaint. Under DHS policy governing harassment complaints, the Agency may take certain "interim measures" if necessary while the investigation proceeds, including taking action "to make sure that harassment does not continue while an inquiry is pending." J.A. 277. At the direction of ELR's chief counsel, Mikhaylov was reassigned to serve as Assistant Field Director for the Agency's Fugitive Operations Unit. In addition, Mikhaylov was issued an order (drafted by ELR) directing him to have no contact with KR during the pendency of the investigation.

In October 2019, OPR concluded its investigation. OPR determined that while Mikhaylov had "made unprofessional, rude and demeaning comments" to KR, J.A. 323, the evidence was insufficient to show that he had engaged in sexual harassment or intimidation. The Agency thereafter issued a letter formally reprimanding Mikhaylov "for exhibiting unprofessional conduct towards a subordinate employee." J.A. 34. The Agency described Mikhaylov's emails to KR as unprofessional and improperly sarcastic and reminded Mikhaylov that his job as a supervisor "is to defuse rather than to ignite the situation by making unprofessional and/or sarcastic remarks or comments when communicating with any employee." J.A. 35. The Agency also reprimanded Mikhaylov for disrespectful behavior towards his supervisor in a series of texts sent in April 2020 over remote access to the Agency's network at the beginning of the pandemic. The Agency

noted that the letter was "intended to impress upon [Mikhaylov] the seriousness of [his] actions." J.A. 36. The Agency stated that the letter would remain in his personnel folder for two years.

Believing that the disciplinary actions taken against him were retaliation for the Disclosures, Mikhaylov sought corrective action from the Board. *See* 5 U.S.C. § 1221(a). Because the administrative judge had determined in *Mikhaylov I* that the Disclosures were protected disclosures under the WPA, the Agency in this action stipulated that the Disclosures were protected.

After conducting a hearing, the administrative judge concluded that the protected Disclosures were contributing factors to the personnel actions, but that the Agency nonetheless had proven by clear and convincing evidence that it would have taken the same personnel actions against Mikhaylov even if he had not made the Disclosures. *See* 5 U.S.C. § 1221(e)(2).

Applying the *Carr* factors,[2] the administrative judge determined that the only one of the Agency officials involved in the challenged personnel actions who might have had

---

[2] In *Mikhaylov I*, we adopted "the factors synthesized by the Federal Circuit in *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999)" to help guide the determination of whether an agency has carried its burden of proving that it would have taken the same action. *See Mikhaylov I*, No. 21-1169, slip op. at 13. The *Carr* factors are:

> the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

(Continued)

7

a motive to retaliate was Janean Ohin, Mikhaylov's supervisor, as her actions were the focus of one of the Disclosures. Because there was no evidence of similarly situated employees who were treated more favorably, the judge believed the case turned on "the first *Carr* factor—the strength of the Agency's case and the degree Ohin was actually involved in making the relevant decisions." J.A. 547.

The administrative judge noted that the investigation was triggered by the complaint from KR and that there was no evidence she had any knowledge of Mikhaylov's whistleblowing activity. The judge concluded that the reassignment and no-contact order were consistent with Agency policy and that the position to which Mikhaylov was transferred was of "equal responsibility" as his position in the Baltimore field office. J.A 548. After reviewing all of the testimony, the administrative judge determined that Ohin was not the ultimate decisionmaker on any of the challenged actions, nor did she attempt to influence the decisions made by others.

As to the letter of reprimand, the administrative judge noted that the decision to issue it was made by Francisco Madrigal, the supervisor with whom Mikhaylov had exchanged the text messages, without input by any other manager. The administrative judge concluded that because the emails and texts from Mikhaylov were clearly unprofessional and disrespectful, Madrigal's decision to issue the letter "is conclusively supported by the record." J.A. 551.

---

*Carr*, 185 F.3d at 1323.

8

The administrative judge therefore upheld the Agency's actions and denied the corrective action sought by Mikhaylov. The administrative judge's decision became the final decision of the Board on October 29, 2021. This appeal followed.

III.

Our review of the Board's decision in whistleblower cases is very limited. "We may only set aside agency actions, findings, or conclusions if they are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Flynn*, 877 F.3d at 204 (cleaned up).

Mikhaylov argues on appeal that the Board erred by concluding that the Agency had proven that it would have taken the same actions even if Mikhaylov had not made the disclosures. According to Mikhaylov, the administrative judge's decision was arbitrary and capricious and not supported by substantial evidence because the judge failed to consider relevant evidence and improperly ignored conflicts in the testimony of Agency witnesses. We disagree.

Mikhaylov's appellate arguments largely focus on his own testimony, which he contends the administrative judge improperly disregarded, and his own view of the facts. These arguments simply ignore the standard of review. For example, Mikhaylov points to confusing (and partially contradictory) testimony from Diane Witte about her involvement in the personnel actions, and he complains that the administrative judge "t[ook] it upon himself" to explain away any inconsistencies. Brief of Appellant at 10. That, of course, is precisely what the finder of fact is supposed to do—assess witness credibility, weigh the

9

evidence, and reconcile conflicting testimony. It simply is not the job of this court to second-guess those decisions. *See Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) ("[W]e do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ."). Similarly, the administrative judge, who found Mikhaylov's credibility to be limited, was not required to accept Mikhaylov's unsupported assertion that Ohin coached KR into filing the complaint or his vague claim (without names or details) that other employees had not been reassigned during an investigation.

The record supports the administrative judge's conclusions that the Agency was following policy when it reassigned Mikhaylov, that Ohin was the only manager who might have motive to retaliate, and that Ohin was not the decisionmaker for any of the challenged actions. These facts, combined with the obvious inappropriateness of Mikhaylov's email and text communications, in turn support the administrative judge's ultimate conclusion that the Agency proved that it would have taken the same actions even if Mikhaylov had not made the Disclosures. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (cleaned up).

## IV.

Because the administrative judge committed no legal error and his factual findings are supported by substantial evidence, we hereby deny Mikhaylov's petition for review.

*PETITION FOR REVIEW DENIED*