## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## 2023 MSPB 2

Docket No. CH-0752-15-0340-I-2

## Chenshiang D. Lin,
## Appellant,
## v.
## Department of the Air Force,
## Agency.

January 9, 2023

Jeffrey Silverstein, Esquire, Dayton, Ohio, for the appellant.

Daniel J. Dougherty, Esquire, Wright-Patterson Air Force Base, Ohio, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal under the agency's Science and Technology Reinvention Laboratory Personnel Management Demonstration Project, 75 Fed. Reg. 53076-01 (Aug. 30, 2010) (Lab Demonstration Project), applicable to individuals, like the appellant, employed in the agency's Air Force Research Laboratory (AFRL).  For the reasons that follow, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Central Regional Office for

further adjudication of the agency's charge and the appellant's affirmative defenses under the standards articulated in this Remand Order.

## BACKGROUND

¶2    As further detailed in the initial decision, the appellant most recently held the position of Senior General Engineer, DR-III, for the AFRL. *Lin v. Department of the Air Force*, MSPB Docket No. CH-0752-15-0340-I-1, Initial Appeal File (IAF), Tab 9, Part 1 at 19-20; *Lin v. Department of the Air Force*, MSPB Docket No. CH-0752-15-0340-I-2, Refiled Appeal File (AF-2), Tab 8, Initial Decision (ID) at 1-2.[1]    In this position, he was subject to a contribution-based compensation system (CCS), rather than the traditional performance-based system.  ID at 5; IAF, Tab 9, Part 3 at 9-10.

¶3    In the CCS that applies in this appeal, contribution in engineering positions such as the appellant's are assessed in four "factors," which are averaged to determine an individual's overall CCS score:    (1) Problem Solving; (2) Communication; (3) Technology Management; and (4) Teamwork and Leadership.  75 Fed. Reg. at 53090, 53093, 53102-04.  For each factor, the Lab Demonstration Project contains detailed descriptions of four "broadband levels" of contribution, levels I through IV.  *Id.* at 53084, 53086, 53102-04.  An individual's broadband level and pay dictates his expected level of contribution.  *Id.* at 53084, 53086.  For instance, the appellant held a DR-III broadband level position, so his contribution on the four factors was determined based on his DR-III broadband level, with some variance based on his actual pay

---

[1] At the request of both parties, the administrative judge dismissed the initial appeal without prejudice for automatic refiling at a later date, resulting in the two docket numbers associated with this single matter.  IAF, Tab 30.

within the broadband.[2]  IAF, Tab 9, Part 2 at 222-31, Part 3 at 4.  At the time of his removal, the appellant's expected contribution score was 3.05, i.e., a level III base score adjusted to account for his actual pay within that broadband.  *Id.*, Part 1 at 83, 93-94.  The appraisal period under the Lab Demonstration Project "begins on October 1 and ends on September 30 of the following year."  75 Fed. Reg. at 53090.

¶4    When the agency determines that an employee is inadequately contributing, one option provided in the CCS is a Contribution Improvement Plan (CIP), which is comparable to a performance improvement plan (PIP) under chapter 43. 75 Fed. Reg. at 53093-94.  If an employee fails to demonstrate increased contribution during the CIP, or if his "contribution increases to a higher level and is again determined to deteriorate in any area within two years" from the start of the CIP, the Lab Demonstration Project provides management with discretion to reduce the pay of or remove the employee without a new CIP.  *Id.* at 53093.

¶5    In January 2013, the agency placed the appellant on a 120-day CIP, citing contribution scores of 3.0 for Problem Solving, 2.9 for Communication, 2.0 in Technology Management, and 3.0 in Teamwork and Leadership for the appraisal year ending in September 2012, which resulted in an overall contribution score of 2.73, below the 3.05 score expected of him.  ID at 12; IAF, Tab 9, Part 2 at 222-31, Part 3 at 4-8.  In September 2013, the agency advised him that he had satisfactorily completed the CIP, but remained subject to the 2-year period in which the Lab Demonstration Project allowed for his removal if his contribution deteriorated.  ID at 12; IAF, Tab 9, Part 2 at 220-21, Part 3 at 36-37; 75 Fed. Reg. at 53093.

---

[2] The designation "DR" is a reference to the appellant's Scientist and Engineer pay plan.  75 Fed. Reg. at 53083.  Other than being one of a number of considerations that determined his expected level of contribution, it is not relevant to our discussion here.

¶6          In January 2015, the agency completed the appellant's annual contribution evaluation for the period of October 2013 to September 2014, concluding that his overall contribution score was 2.73, which was again below the 3.05 score expected of him.  IAF, Tab 9, Part 1 at 83-86, 92-93, Part 2 at 4-11.  Effective March 4, 2015, the agency removed him for "failure to demonstrate an adequate level of contribution commensurate with [his] compensation (salary) level for the period 1 October 2013 through 30 September 2014, within a two-year period of a [CIP]."  ID at 4-5; IAF, Tab 9, Part 1 at 19-21, 92-94.  The instant appeal followed.  IAF, Tab 1.

¶7          The administrative judge held the appellant's requested hearing and issued an initial decision, affirming his removal.  ID at 1-2, 54; IAF, Tab 6 at 2.  In determining that the agency proved its contribution-based charge, the administrative judge applied the standard applicable to a chapter 43 performance-based action, with some adjustments to account for differences between a chapter 43 appeal and the Lab Demonstration Project.  ID at 5-6, 9-44.  She found that the appellant failed to prove his affirmative defenses of age discrimination and reprisal for engaging in equal employment opportunity (EEO) activity.  ID at 44-54.

¶8          The appellant has filed a petition for review.  *Lin v. Department of the Air Force*, MSPB Docket No. CH-0752-15-0340-I-2, Petition for Review (PFR) File, Tab 3.[3]  The agency has filed a response, and the appellant has replied.[4]  PFR File, Tabs 5-6.

---

[3] The appellant offers new evidence on review in the form of an affidavit from a previously unidentified witness and her supporting documents.  PFR File, Tab 3 at 7, 10-52.  The Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence.  *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980).  The appellant asserts that that this information was "not available at the time of the hearing," but does not provide any factual support for this claim.  PFR File, Tab 3 at 5.  Therefore, we have not considered this evidence.

ANALYSIS

The appeal must be remanded for further analysis of the charge and affirmative defenses.

¶9    A tenured Federal employee like the appellant may appeal a contribution-based reduction in pay or removal under the agency's Lab Demonstration Project to the Board.  IAF, Tab 9, Part 1 at 19; 75 Fed. Reg. at 53094 (citing 5 C.F.R. § 432.106 as reflecting the appeal and grievance rights of an employee under the Lab Demonstration Project); *see* 5 C.F.R. § 432.106(a) (indicating that eligible employees have the right to appeal a chapter 43 removal or reduction in grade to the Board).  The Lab Demonstration Project provides that the procedures for instituting a removal or reduction-in-grade action "are similar to and replace those established in 5 CFR part 432 pertaining to performance-based reduction in grade and removal actions."  75 Fed. Reg. at 53093.  It further provides that the procedures in part 432 are "waived to the extent necessary" to permit the agency's CCS broadband system and CIP process, and to exclude appeals of "reductions in broadband level not accompanied by a reduction in pay."  75 Fed. Reg. at 53098.  Part 432 contains the regulations of the Office of Personnel Management (OPM) implementing the provisions of 5 U.S.C. chapter 43 relating to the reduction in grade or removal of an employee for unacceptable performance.  5 C.F.R. § 432.101.

¶10    When the initial decision was issued, the Board's case law stated that, in an appeal of a typical performance-based removal under chapter 43, the agency was required to prove the following by substantial evidence:  (1) OPM approved

---

[4] A reply is limited to the factual and legal issues raised by another party in the response to the petition for review.  5 C.F.R. § 1201.114(a)(4).  It may not raise new allegations of error.  *Id.*  Accordingly, we will not consider arguments first raised by the appellant in his reply, such as his assertion that removal was too harsh a penalty. PFR File, Tab 6 at 5-13; *see Boston v. Department of the Army*, 122 M.S.P.R. 577, ¶ 5 n.3 (2015) (declining to consider new arguments that were first raised in a reply brief). We also will not consider the evidence first presented with his reply.  PFR File, Tab 6 at 15-28; *see Avansino*, 3 M.S.P.R. at 214.

its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) his performance standards were valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned him of the inadequacies of his performance during the appraisal period and gave him an adequate opportunity to demonstrate acceptable performance; and (5) after an adequate improvement period, his performance remained unacceptable in at least one critical element. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 13. Agencies generally provide their employees with an opportunity to demonstrate acceptable performance by placing them on a PIP. *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355, 1361 (Fed. Cir. 2021).

¶11    However, while this case was pending on review, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) recognized for the first time that an agency must prove an additional element to support an adverse action under chapter 43. *Santos*, 990 F.3d at 1360-61; *Lee v. Department of Department of Veterans Affairs*, 2022 MSPB 11, ¶ 14. Specifically, the agency "must justify institution of a PIP" by proving that the employee's performance was unacceptable before the PIP. *Santos*, 990 F.3d at 1360-61; *Lee*, 2022 MSPB 11, ¶ 14. The court noted that 5 U.S.C. § 4302(c)(6) authorizes actions against employees "who continue to have unacceptable performance but only after an opportunity to demonstrate acceptable performance." *Santos*, 990 F.3d at 1360-61 (quoting 5 U.S.C. § 4302(c)(6)). The court reasoned that proving continued unacceptable performance requires a showing that the performance was unacceptable prior to the PIP. *Santos*, 990 F.3d at 1360-61. This holding applies to all pending cases, regardless of when the events took place. *Lee*, 2022 MSPB 11, ¶ 16. For the reasons explained below, *Santos* is applicable to this matter.

*The administrative judge correctly determined that chapter 43 was generally applicable to the agency's proof of its charge.*

¶12    The administrative judge analyzed the agency's proof of its charge as if the appellant was unsuccessful in completing a PIP under chapter 43. ID at 5-6, 9-44. She modified the elements of a chapter 43 charge of unacceptable performance to account for the specific requirements of the Lab Demonstration Project. In particular, she found that the agency was required to prove by substantial evidence that (1) OPM approved the contribution system, (2) the agency communicated to the appellant his four contribution factors and expected level of contribution, (3) the four contribution factors were valid, (4) the agency warned the appellant that his contribution was inadequate and gave him a reasonable opportunity to demonstrate adequate contribution during the 2-year period following the CIP (specifically, in the instant case from October 1, 2013, to September 30, 2014), and (5) his contribution remained deficient. ID at 9-44. The parties do not dispute the administrative judge's formulation of the agency's burden to prove the charge. We agree that she appropriately began her analysis of the charge with the factors set forth in chapter 43.

¶13    In the Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, § 601(a), 92 Stat. 1111, 1185 (codified in pertinent part at 5 U.S.C. §§ 4701(a)(4), 4703(a)), Congress authorized OPM to conduct, directly or through agencies or organizations, projects known as "demonstration projects," to evaluate and determine whether "a specified change in personnel management policies or procedures would result in improved Federal personnel management." Since the enactment of the CSRA, OPM has approved various demonstration projects. *See, e.g.*, *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 3 (2015) (describing an OPM demonstration project applicable to an appellant's position at the Department of the Army); *Solamon v. Department of Commerce*, 119 M.S.P.R. 1, ¶¶ 2-3 (2012) (describing a demonstration project approved by OPM for the Bureau of Economic Analysis); *Guillebeau v. Department of the*

*Navy*, [93 M.S.P.R. 379](#), ¶ 2 (2003) (analyzing removal for unsatisfactory work performance, issued under an OPM-approved demonstration project), *aff'd*, [362 F.3d 1329](#) (Fed. Cir. 2004). An agency using an OPM-approved demonstration project is not "limited . . . by any provision of [Title 5]" or any rule or regulation implementing Title 5 "which is inconsistent with [an] action" regarding, among other things, compensating, assigning, reassigning, promoting, or methods of disciplining employees. [5 U.S.C. § 4703](#)(a).

¶14    Congress later specifically required the Secretary of Defense to implement demonstration projects in certain military laboratories, including the AFRL. National Defense Authorization for Fiscal Year 2008, Pub. L. No. 110-181, § 1107, 122 Stat. 3, 357-58 (requiring the Secretary of Defense to implement demonstration projects at certain Department of Defense laboratories (referencing [5 U.S.C. § 9902](#)(c)(2) (listing, among other laboratories, the AFRL)); National Defense Authorization for Fiscal Year 1995, Pub. L. No. 103-337, § 342(b), 108 Stat. 2663, 2721 (1994) (providing that the Secretary of Defense may implement demonstration projects at science and technology reinvention laboratories under [5 U.S.C. § 4703](#) with OPM approval). It also expressly eliminated any requirement that the Secretary obtain OPM approval for such a demonstration project. National Defense Authorization Act for Fiscal Year 2001 (2001 NDAA), Pub. L. No. 106-398, app. § 1114(a), 114 Stat. 1654A-315 (2000). The agency relied on [5 U.S.C. § 4703](#) and the foregoing authorizations in implementing its Lab Demonstration Project. 75 Fed. Reg. at 53076.

¶15    The Lab Demonstration Project in this matter contains specific provisions for "[d]ealing with [i]nadequate [c]ontribution." *Id.* at 53093-94. It waives Title 5 statutes and regulations, including [5 U.S.C. §§ 4301](#)-4305 "to the extent necessary to allow provisions of the [CCS]," and [5 C.F.R. §§ 432.101](#)-.105, "to the extent necessary to allow provisions of CCS and to address inadequate contribution." 75 Fed. Reg. at 53098-99.

¶16      In pertinent part, the Lab Demonstration Project procedures include providing employees with a description of the broadband level factors "so that they know the basis on which their contribution is assessed." *Id.* at 53090. They also provide the methodology for assessing an employee's contribution, warn that inadequate contribution could lead to a reduction in pay or removal, and give the employee a reasonable opportunity to improve on a CIP of at least 60 days while "offer[ing] appropriate assistance to the employee." *Id.* at 53090, 53093. It is intended that these "procedures are similar to and replace those established in 5 C.F.R. part 432 pertaining to performance-based reduction in grade and removal actions." 75 Fed. Reg. at 53093. These provisions essentially mirror, in modified form, the requirements of chapter 43 that an agency communicate to an employee his position's performance standards and critical elements, warn him of inadequacies of his performance, and provide him with an adequate opportunity to improve. *Lee*, 2022 MSPB 11, ¶ 13. The Lab Demonstration Project further provides that management has the discretion to initiate a reduction in pay or removal if the employee either does not improve during the CIP or his contribution improves but deteriorates again within 2 years of the beginning of the CIP. 75 Fed. Reg. at 53093. This is comparable to the requirement in a chapter 43 action that an agency prove that the employee's performance remained unacceptable after an adequate improvement period. *Lee*, 2022 MSPB 11, ¶ 13. The Lab Demonstration Project notes the similarity between it and performance-based actions taken under 5 C.F.R. part 432. 75 Fed. Reg. at 53093.

¶17      Given the parallels between the requirements of an action under chapter 43 and those under the agency's Lab Demonstration Project, we find that the application of chapter 43 standards to the appellant's removal, generally, is not inconsistent with the CCS. In instances when chapter 43 diverges from the Lab Demonstration Project, we find that the administrative judge properly eliminated or modified the chapter 43 requirements to the extent necessary to allow the agency to implement its CCS. *See* 75 Fed. Reg. at 53098-99. For example,

she did not require the agency to prove the appellant was held to "critical elements," as doing so is inconsistent with the agency's rating system. She also adopted the agency's use of the term "contribution" instead of "performance."

¶18     We note that one chapter 43 element is not applicable here. Specifically, OPM's approval is not required for a Lab Demonstration Project, and therefore we disagree with the administrative judge's determination that the agency was required to prove this element of a chapter 43 performance-based charge. ID at 9; 2001 NDAA, Pub. L. No. 106-398, app. § 1114(a), 114 Stat. 1654A-315. In any event, the administrative judge found that OPM approved the Lab Demonstration Project, and the parties do not dispute this finding on review. *Id.*; 75 Fed. Reg. at 53077. Therefore, any error was harmless. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

> *We must remand this appeal for further adjudication in light of Santos.*

¶19     Next, we must determine the extent to which *Santos*, 990 F.3d 1355, applies to this appeal. The holding in *Santos* that an agency must prove that an employee's performance was unacceptable before instituting a PIP was grounded in 5 U.S.C. § 4302(c)(6). *Santos*, 990 F.3d at 1360-61. Pursuant to 5 U.S.C. § 4703(a), an agency using a demonstration project is not limited by inconsistent provisions of Title 5. Further, the Lab Demonstration Project provides that chapter 43 and OPM's implementing regulations are waived to the extent necessary to allow for the agency's CCS. 75 Fed. Reg. at 53098-99. However, we discern no basis for concluding that 5 U.S.C. § 4302(c)(6) is inconsistent with, or impedes, the agency's CCS rating or performance-based action processes. Section 4302(c)(6) of Title 5 and the Lab Demonstration Project both contemplate that a CIP or PIP will only be implemented after a determination is made that the employee's contribution or performance was

unacceptable. 75 Fed. Reg. at 53093-94. The Lab Demonstration Project explicitly describes the implementation of a CIP, which could lead to a removal such as the appellant's, as applying to an employee whose level of contribution has already fallen below a particular threshold. 75 Fed. Reg. at 53093. Further, in support of its proposed removal, the agency listed the appellant's inadequate contribution during the assessment period ending in September 2012, as well as the fact that this contribution was the basis on which the appellant was placed on a CIP. IAF, Tab 9, Part 1 at 92, 94. Therefore, we find that the agency's burden in this appeal includes proof that the appellant's CIP was justified because his pre-CIP performance was inadequate.

¶20      Because the parties did not have an opportunity to address this element of the agency's burden below, we remand the appeal for further adjudication. *See Lee*, 2022 MSPB 11, ¶ 16. On remand, the administrative judge shall accept evidence and argument, and hold a supplemental hearing if appropriate, on whether the agency proved by substantial evidence that the appellant's pre-CIP contribution was inadequate. *Id.*, ¶ 17. The administrative judge shall then issue a new initial decision consistent with *Santos*. *Id.* If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate into her remand initial decision the prior findings from the initial decision on other elements of the agency's case with the exception of the matters discussed below. *Id.*

> *We further remand for the administrative judge to determine whether the CIP period provided the appellant an adequate opportunity to improve and to apply the correct evidentiary standards for his affirmative defenses.*

¶21      On review, the appellant disputes the administrative judge's findings that the agency proved by substantial evidence that it provided him with a reasonable opportunity to improve. PFR File, Tab 3 at 5-8. In particular, he argues that he lacked the training and background he needed to perform his assigned functions, and was disadvantaged in his performance because English was not his

first language. *Id.* He notes that he "performed admirably for 29 years in an engineering capacity" at the agency. *Id.* at 5, 8. In removing the appellant, the agency primarily relied on his inadequate contribution following the CIP, specifically during the period from October 2013 to September 2014. IAF, Tab 9, Part 1 at 92-93. In finding that the agency provided the appellant with a reasonable opportunity to demonstrate adequate contribution, the administrative judge considered this period. ID at 15-16, 33-44. This was in error.

¶22     In some instances, such as here, an employee is able to perform at an acceptable level while on an improvement plan, but his performance subsequently deteriorates and again becomes unacceptable. *Sullivan v. Department of the Navy*, 44 M.S.P.R. 646, 656 (1990), *overruled on other grounds, as recognized in Thomas v. Department of Defense*, 117 F. App'x 722, 724-25 (Fed. Cir. 2004). Such an individual is known as a "roller coaster" employee. *Id.* An agency that has implemented a PIP generally is not required to give a roller coaster employee a new PIP prior to removing him provided it takes its action based on instances of unacceptable performance in the same critical elements for which the PIP was imposed that occurred within 1 year from the inception of the PIP.[5] *See id.* at 659 (stating that an agency may take an action based on instances of unacceptable performance following successful completion of a PIP that occur within 1 year after the advanced notice of the PIP); 5 C.F.R. § 432.105(a)(2) (providing that when an employee performed acceptably during the year following the beginning of an opportunity to demonstrate acceptable

---

[5] The administrative judge implicitly found that under the agency's Lab Demonstration Project, the 1-year period was extended to 2 years. ID at 8, 12, 34. The parties do not challenge this finding on review, and we find that it is supported by the record. Specifically, the Lab Demonstration Project provides that, "[i]f the employee's contribution increases to a higher level [during the CIP] and is again determined to deteriorate in any area within two years from the beginning of the opportunity period, management has sole and exclusive discretion to initiate reduction in pay or removal with no additional opportunity to improve." 75 Fed. Reg. at 53093.

performance and his performance becomes unacceptable again, the agency must provide a new opportunity to demonstrate acceptable performance before deciding to remove or reduce him in grade under chapter 43). However, absent exceptions not applicable here, in such instances, the agency must prove that the original PIP constituted a reasonable opportunity to demonstrate acceptable performance. *Sullivan*, 44 M.S.P.R. at 659-60.

¶23 In finding that the agency provided the appellant with a reasonable opportunity to improve, the administrative judge assessed the wrong period of time. Specifically, she considered October 2013 to September 2014, the period of inadequate contribution on which his removal was based, instead of the period of the CIP. ID at 15-33. While considering this period is appropriate for determining whether the appellant's performance again deteriorated after the CIP, the proper period for assessing the appellant's opportunity to improve is the CIP period itself, from January 14 to May 13, 2013. IAF, Tab 9, Part 2 at 220-22. It is unclear whether the CIP provided an adequate opportunity for the appellant to improve, as the administrative judge did not make any findings on this subject.

¶24 The administrative judge who oversaw the proceedings below and issued the initial decision is no longer employed by the Board. When there is conflicting testimony on a material issue, and a new administrative judge will decide the case, the testimony should be heard again to permit her to make credibility determinations based on witness demeanor. *Stinson v. Department of Justice*, 4 M.S.P.R. 521, 523 (1981). A factual dispute is "material" if, in light of the governing law, its resolution could affect the outcome. *Oram v. Department of the Navy*, 2022 MSPB 30, ¶ 9 n.5. Because the appellant disputes that he was given an adequate opportunity to improve, on remand, the administrative judge should accept evidence and argument, and hold a supplemental hearing, to determine if the CIP provided the appellant with this opportunity. If the agency makes the additional showing required under *Santos* on remand, and proves that the CIP provided the appellant with an adequate opportunity to

demonstrate acceptable contribution, the administrative judge may incorporate the findings from the prior initial decision on other elements of the agency's case in the remand initial decision.

¶25     Finally, the appellant presented claims of age discrimination and EEO reprisal below, which the administrative judge found unproven.  ID at 44-53.  The parties do not challenge this determination on review.  Nonetheless, on remand the administrative judge must further adjudicate these claims.  The Federal Circuit held in *Santos*, 990 F.3d at 1363-64, that the Board must consider an appellant's pre-PIP performance in the context of an affirmative defense when, as here, the validity of the agency's proffered reason for taking the performance-based action is a factor in analyzing that claim.  *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶ 28 (holding that in determining whether the agency has afforded the appellant a reasonable opportunity to improve in a chapter 43 action, relevant factors include the nature of the duties and responsibilities of the appellant's position, including whether assignments of work were made in a discriminatory manner).  Further, in the period since the administrative judge issued her initial decision, we clarified the evidentiary standards and burdens of proof for age discrimination and EEO reprisal claims in *Pridgen*, 2022 MSPB 31, ¶¶ 20-25, 30-33.  In the proceedings on remand, the administrative judge should advise the parties of the standards set forth in *Pridgen*, provide them with an opportunity to present argument and evidence, and hold a supplemental hearing on the appellant's affirmative defenses to permit the parties to address these standards, as well as any claims regarding his pre-CIP performance.  She should then apply the standards set forth in *Santos* and *Pridgen* in the remand initial decision.[6]  ID at 21-22, 24; PFR File, Tab 3 at 7.

---

[6] The appellant also appears to dispute the administrative judge's determination that his demeanor and testimony was "indirect and evasive."  PFR File, Tab 3 at 8; ID at 29-30.  The Board must defer to an administrative judge's credibility determinations when they

## ORDER

For the reasons discussed above, we GRANT the petition for review, VACATE the initial decision, and REMAND this case to the regional office for further adjudication in accordance with this Opinion and Order.

FOR THE BOARD:

/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.

---

are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not offered such reasons here and we therefore decline to overturn the administrative judge's credibility findings.