**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| RORY C. FLYNN, | DOCKET NUMBER |
| Appellant, | DC-1221-14-1124-M-5 |
| v. | |
| SECURITIES AND EXCHANGE COMMISSION, | DATE: November 14, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Bruce M. Bettigole</u>, New York, New York, for the appellant.

<u>Laura Walker</u> and <u>James V. Blair</u>, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and
did not participate in the adjudication of this appeal.

**REMAND ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review, VACATE the initial decision, find that the appellant met his burden to prove that he made a protected disclosure under 17 C.F.R. § 201.900(b) that was a contributing factor in his employment termination, and REMAND the case to the regional office for further adjudication in accordance with this Order.

## BACKGROUND

¶2    The Securities and Exchange Commission (Commission) appointed the appellant to the position of Associate General Counsel (Adjudication) in its Office of General Counsel (OGC) effective August 12, 2012, subject to a 2-year trial period. *Flynn v. Securities & Exchange Commission*, MSPB Docket No. DC-1221-14-1124-W-1, Initial Appeal File (1124-W-1 IAF), Tab 27 at 5.  On May 6, 2013, the agency terminated the appellant during his trial period, citing poor performance, lack of professional judgment, and an inability to work cooperatively with senior-level managers.  1124-W-1 IAF, Tab 16 at 23, 25-27.

¶3    As Associate General Counsel, the appellant headed OGC's Adjudication Practice Group and reported directly to the Deputy General Counsel.  1124-W-1 IAF, May 19, 2015 Hearing Transcript (5/19/15 HT) at 24, 70 (testimony of the appellant).[2]  As relevant to this appeal, the Adjudication Practice Group drafted decisions on appeals to the Commission from decisions issued by the Commission's administrative law judges and by self-regulatory organizations. *Id.* at 41-43 (testimony of the appellant).  The Commission's regulation at 17 C.F.R. § 201.900, also known as "Rule 900," provides guidance for these appeals.  A portion of the regulation, referred to here as Rule 900(a), provides "[g]uidelines for timely completion of proceedings."  17 C.F.R. § 201.900(a)(1)(iii) (2015).  That provision states that a decision on an appeal "should be issued

---

[2] The hearing transcript is in a condensed format such that four pages of transcript appear on each page.  To avoid confusion and to be consistent with the administrative judge's initial decision, we have cited to the page numbers assigned by the court reporter and not the Board's numerical pagination.

within seven months" of the date an appeal is filed unless the appeal is complicated, "in which case a decision . . . may be issued within 11 months." *Id.*[3]

¶4 Another portion of the regulation, referred to here as Rule 900(b), provides for "[r]eports to the Commission on pending cases," also known as "900(b) reports." 17 C.F.R. § 201.900(b) (2015). This portion of the regulation directs that OGC submit "confidential status reports" regarding "adjudicatory proceedings" to the Commission. *Id.* For matters not concluded within 30 days of the deadlines set forth in Rule 900(a), OGC "shall specifically apprise the Commission of that fact, and shall describe the procedural posture of the case, project an estimated date for conclusion . . . , and provide such other information as is necessary to enable the Commission to determine whether additional steps are necessary to reach a fair and timely resolution of the matter." *Id.*

¶5 During the appellant's 9 months of employment as the Associate General Counsel, he reported alleged violations of Rule 900. Specifically, on October 16, 2012, the appellant expressed his concern to the then-General Counsel, M.C., and the Deputy General Counsel that the Commission was not issuing decisions on appeals within the 7- and 11-month timeframes in Rule 900(a)(1)(iii). 1124-W-1 IAF, Tab 89 at 31-35. On October 18, 2012, he also expressed his opinion to the Deputy General Counsel that OGC was violating Rule 900(b) in its periodic 900(b) reports by not providing the level of detail that the rule required for cases that exceeded the Rule 900(a)(1)(iii) timeframes. 1124-W-1 IAF, Tab 89 at 54-55.

¶6 In November 2012, the appellant followed up with the Deputy General Counsel both in person and via email, repeating his concerns and suggesting

---

[3] As noted by the administrative judge, the current version of Rule 900 became effective on September 27, 2016. Amendments to the Commission's Rules of Practice, 81 Fed. Reg. 50,212-01, 50,241-42 (July 9, 2016) (codified at 17 C.F.R. § 201.900). The current version of Rule 900(a)(1)(iii) contains different timeframes, i.e., 8 and 10 months from the completion of briefing, for timely completion of proceedings. Accordingly, all citations to "Rule 900" refer to the earlier version of the rule that was in place at the time of the events giving rise to this case. *See* 17 C.F.R. § 201.900 (2015).

solutions. 1124-W-1 IAF, Tab 72 at 92-96, Tab 89 at 67-68; 5/19/15 HT at 136-37, 173-75 (testimony of the appellant). In January 2013, he also expressed his concerns to the new Commission Chair, E.W., and her staff, and the new General Counsel, G.A.[4] 5/19/15 HT at 187, 190-92, 203-05 (testimony of the appellant); 1124-W-1 IAF, Tab 75 at 222-23, Tab 90 at 56, Tab 115 at 14. On April 19, 2013, the appellant sent a draft 900(b) report to the Deputy General Counsel, again raising his concerns that the reports did not provide sufficient detail required by Rule 900(b). 1124-W-1 IAF, Tab 91 at 5-6, Tab 75 at 222-33. In his draft report, he referenced Rule 900 for older cases by stating, "A decision by the Commission has not been issued within the recommended guidelines set forth in Rule 900(a)(l)(iii) (i.e., within seven months of the appeal)." 1124-W-1 IAF, Tab 75 at 225-33.

¶7        On April 22, 2013, the appellant met with the Deputy General Counsel to discuss the draft report and, over the appellant's objection, the Deputy General Counsel instructed the appellant to remove the references to Rule 900. *Id.* at 4; 5/19/15 HT at 269-73 (testimony of the appellant). The appellant was scheduled to meet with the new Commission Chair, M.W., on May 6, 2013, to discuss his concerns. 5/19/15 HT at 257-59, 282 (testimony of the appellant). However, the meeting did not occur because it was canceled on May 2, 2013, four days before the appellant's termination. *Id.* at 283 (testimony of the appellant); 1124-W-1 IAF, Tab 16 at 23, 25-27.

¶8        After the parties engaged in extensive discovery over several months, the assigned administrative judge held the appellant's requested hearing over the course of 3 days in May and July 2015. The administrative judge issued an initial decision denying the appellant's request for corrective action. 1124-W-1 IAF, Tab 128, Initial Decision at 1, 15 (July 30, 2015) (1124-W-1 ID). He found that the appellant did not meet his burden to prove his prima facie case of

---

[4] G.A. was appointed as General Counsel in January 2015. 5/19/15 HT at 194-95 (testimony of the appellant). In April 2015, G.A. became the Senior Counsel to the next Chair of the Commission. *Id.* at 205-06 (testimony of the appellant).

whistleblower reprisal by preponderant evidence because he did not prove that his disclosures were protected. *Id.* at 6-16. Rather, he found that the appellant disputed the agency's policy decision not to comply with what he concluded were discretionary guidelines in Rule 900. *Id.* at 14-15. The appellant filed a petition for review of the initial decision, but the two Board members could not agree on the disposition of the petition, and the initial decision therefore became the final decision of the Board. *Flynn v. Securities & Exchange Commission*, MSPB Docket No. DC-1221-14-1124-W-1, Order (Sept. 1, 2016).

¶9      The appellant then sought review of the Board's final decision in the U.S. Court of Appeals for the Fourth Circuit (Fourth Circuit). In December 2017, the Fourth Circuit issued a decision remanding the case to the Board for further consideration. *Flynn v. Securities & Exchange Commission*, 877 F.3d 200 (4th Cir. 2017). The court agreed with the Board that the appellant's disclosures alleging violations of the agency's Rule 900(a) were not protected, but it found that the Board failed to fully consider whether the appellant made protected disclosures alleging violations of Rule 900(b). *Id.* at 205-08. The court remanded the case to the Board for the administrative judge to interpret the evidence after further development of the record, if necessary. *Flynn*, 877 F.3d at 208.

¶10     In February 2018, after the case had returned to the Board, the appellant moved to vacate the administrative judge's prior initial decision based on violations of the Appointments Clause and the separation of powers requirements of the U.S. Constitution. *Flynn v. Securities & Exchange Commission*, MSPB Docket No. DC-1221-14-1124-M-1, Appeal File (1124-M-1 AF), Tab 2. The remanded appeal was assigned to the same administrative judge who decided the initial appeal. In March 2018, he dismissed the appeal without prejudice pending the Supreme Court's decision in *Lucia v. Securities & Exchange Commission*, 868 F.3d 1021 (D.C. Cir. 2017), *cert. granted*, 583 U.S. 1089 (Jan. 12, 2018) (No. 17-130), *rev'd & remanded*, 585 U.S. 237 (2018). 1124-M-1 AF, Tab 7, Initial

Decision. In June 2018, just after the Supreme Court decided *Lucia*, the administrative judge dismissed the appeal a second time "to allow time to further refine the issues and determine the proper scope of inquiry and action by the Board." *Flynn v. Securities & Exchange Commission*, MSPB Docket No. DC-1221-14-1124-M-2, Appeal File (1124-M-2 AF), Tab 3, Initial Decision. He dismissed the appeal without prejudice a third time in October 2018. *Flynn v. Securities & Exchange Commission*, MSPB Docket No. DC-1221-14-1124-M-3, Appeal File (1124-M-3 AF), Tab 2, Initial Decision.

¶11 Later in October 2018, the appeal was refiled and reassigned to a new administrative judge. *Flynn v. Securities & Exchange Commission*, MSPB Docket No. DC-1221-14-1124-M-4, Appeal File (1124-M-4 AF), Tab 2. The agency argued in response to the appellant's constitutional arguments, in part, that the appellant had waived those arguments by failing to raise them in his initial appeal before the administrative judge or in his petition for review of the initial decision in that case. 1124-M-2 AF, Tab 5; 1124-M-3 AF, Tab 5. The new administrative judge certified for interlocutory appeal his holding that the appellant's constitutional claims were properly before the Board, the Board's administrative judges are Officers of the United States whose appointments did not comply with the Appointments Clause, and the Board lacks authority to address the appellant's separation of powers argument because doing so would require the Board to adjudicate the constitutionality of a statute. 1124-M-4 AF, Tab 9.

¶12 On March 31, 2022, the Board ratified the prior appointments of its administrative judges. 1124-M-4 AF, Tab 19. That same day, it issued an Order on the holdings certified for interlocutory review by the administrative judge. 1124-M-4 AF, Tab 20, Order (Mar. 31, 2022) (1124-M-4 Interlocutory Order). The Board found that (1) the law of the case doctrine prevented relitigating the appellant's claims arising out of his Rule 900(a) disclosures, (2) the appellant's Appointments Clause claim was moot because the Board had ratified its

administrative judges' appointments, and (3) the Board lacked authority to adjudicate the appellant's separation of powers claim. *Id.*, ¶¶ 8-12. The Board returned the appeal to the regional office for further adjudication of the appellant's claims arising out of his Rule 900(b) disclosures before a new administrative judge. *Id.*, ¶ 13.

¶13 Following the return of the appeal to the administrative judge, the appellant sought to engage in additional discovery and requested a new hearing. 1124-M-4 AF, Tab 31 at 5-8. The administrative judge denied these requests on the basis that the record was sufficiently developed on the issue of whether the appellant established his prima facie case, and that the Fourth Circuit's decision indicated additional evidence may only be needed if the appellant established his prima facie burden regarding his Rule 900(b) disclosures. 1124-M-4 AF, Tab 37 at 5-6. After dismissing the appeal without prejudice a fourth time, 1124-M-4 AF, Tab 38, Initial Decision, the appeal was refiled and, after considering the parties' closing briefs, the administrative judge issued an initial decision denying corrective action on the existing record. *Flynn v. Securities & Exchange Commission*, MSPB Docket No. DC-1221-14-1124-M-5, Appeal File (1124-M-5 AF), Tabs 1, 3-4, 13, Initial Decision (1124-M-5 ID) at 2, 38. He reasoned that the appellant did not prove that he reasonably believed the agency violated Rule 900(b) because, among other things, he did not provide copies of the 900(b) reports submitted prior to his August 2012 appointment that would support his claim that they were missing necessary information. 1124-M-5 ID at 27-28. As for the September 2012 and March 2013 900(b) reports that the appellant did provide copies of, the administrative judge reasoned that the appellant did not prove that he reasonably believed the agency violated Rule 900(b) based on the following: (1) the 900(b) reports contained the date the appeal was filed, from which the Commission could garner its age; (2) the appellant submitted to the Commission a supplemental "OGC Pending Cases" report that "cured" or enabled the Commission to "reasonably gauge" the missing information in the 900(b)

report, including the age of each case, the procedural posture, and the estimated completion dates for overdue cases; and (3) the "stale" completion dates that predated the September 2012 900(b) report constituted minor or inadvertent miscues. 1124-M-5 ID at 27-37.

¶14 The administrative judge also found that the appellant failed to prove that he reasonably believed that he disclosed a violation of gross mismanagement when he objected to the Deputy General Counsel's instruction to delete the information related to the 7-month "aspirational goal" in Rule 900(a)(1)(iii) that the appellant had included in the draft March 2013 900(b) report. 1124-M-5 ID at 32-33, 37. The administrative judge reasoned that because the appellant did not prove that he reasonably believed the 900(b) reports violated Rule 900(b), the Deputy General Counsel had discretion to reject the appellant's suggestions and proposals as a matter of policy under the circumstances. 1124-M-5 ID at 32-33.

¶15 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He has also filed a motion to exceed the word limitation. PFR File, Tab 2. The agency has opposed the appellant's petition and motion, and the appellant has filed a reply. PFR File, Tabs 3, 6-7. The appellant has also filed a motion for leave to request a status report, or alternatively a decision on his petition for review. PFR File, Tab 9.

### DISCUSSION OF ARGUMENTS ON REVIEW

<u>We decline to revisit the appellant's Appointments Clause and separation of powers claims, which were decided in the Board's interlocutory decision.</u>

¶16 On review, the appellant reraises his constitutional challenges. As to the Appointments Clause claim, he reargues that pursuant to the U.S. Supreme Court's decision in *Lucia*, 585 U.S. 237, the Board's administrative judges do not have the authority to decide his appeal. PFR File, Tab 1 at 23-24; 1124-M-1 AF, Tab 2 at 5-9, Tab 6 at 5. He further argues that the Board's ratification of the appointment of the administrative judge who decided his appeal on remand was not sufficient to "appoint" him as required by the Constitution. PFR File, Tab 1

at 23-24. The appellant also seeks to "preserve" his claim that, pursuant to *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477 (2010), the Board's multiple levels of for-cause removal procedures for an administrative judge violate the separation of powers requirements under the Constitution. PFR File, Tab 1 at 24; 1124-M-1 AF, Tab 2 at 9. As mentioned above, the Board issued an interlocutory decision during the proceedings on remand that rejected these challenges. 1124-M-4 Interlocutory Order, ¶¶ 10-12. The appellant offers no legal or factual basis for revisiting those findings. To the contrary, in *McIntosh v. Department of Defense*, 53 F.4th 630, 641 (Fed. Cir. 2022), the U.S. Court of Appeals for the Federal Circuit agreed that any Appointments Clause issues concerning the Board's administrative judges had been remedied by the Board's ratification of the appointments of its administrative judges. And we continue to lack the authority to address the separation of powers issue. *Davis-Clewis v. Department of Veterans Affairs*, 2024 MSPB 5, ¶¶ 7-9 (holding that the Board lacks the authority to adjudicate the constitutionality of the Board's administrative judges' statutory removal protections). Accordingly, we decline to consider these claims further.

<u>The administrative judge erred in finding that the appellant did not establish that his Rule 900(b) disclosures were protected.</u>

¶17    As to the merits of the appellant's claim of whistleblower reprisal, the administrative judge concluded that the appellant failed to prove that he made a protected disclosure that the agency violated Rule 900(b). 1124-M-5 ID at 25-37 To prevail on the merits of an IRA appeal, an appellant must meet his initial burden of proving by preponderant evidence that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D) and; (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 8. The appellant's

termination was a personnel action. 0024-W-1 ID at 2; 5 U.S.C. 2302(a)(2)(A)(iii); *McCarty v. Environmental Protection Agency*, 108 M.S.P.R. 45, ¶ 13 (2008). We disagree with the administrative judge.

¶18     A protected disclosure is one that an appellant reasonably believes, as relevant here, evidences any violation of a regulation, such as 17 C.F.R. § 201.900. 5 U.S.C. § 2302(b)(8); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer in his position with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced any of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶¶ 5, 8.

¶19     The administrative judge determined that, between October 2012 and April 2013, the appellant disclosed to the Deputy General Counsel, among others, that the Adjudication section failed to provide required information to the Commission in 900(b) in reports that the Adjudication section submitted prior to the appellant's arrival in August 2012, as well as in reports prepared after his arrival, in or around September 2012, and in or around March 2013.[5] 1124-M-5 ID at 27. Nevertheless, the administrative judge found that the appellant failed to prove that he had a reasonable belief that the agency committed wrongdoing described in § 2302(b)(8)(A) with respect to those 900(b) reports. 1124-M-5 ID at 28, 31, 33, 37.

¶20     As to the pre-August 2012 reports, the administrative judge acknowledged that the appellant's belief that these reports were noncompliant was based on the "unrefuted evidence" showing that, around September and October 2012, the Assistant General Counsel, J.M., informed him that the format and content of the pre-August 2012 reports was similar to the September 30, 2012 report, on which

---

[5] The 900(b) report for the period ending March 31, 2013, was apparently not filed with the Commission until sometime in late April 2013. 1124-W-1 IAF, Tab 91 at 140.

she was asking him to sign off. 1124-M-5 ID at 27; 5/19/15 HT at 111-12 (testimony of the appellant); 1124-W-1 IAF, July 1, 2015 Hearing Transcript (7/1/15 HT) at 158-60 (testimony of J.M.). Nevertheless, the administrative judge found that the appellant did not establish that his belief that the pre-August 2012 reports were noncompliant was reasonable because the appellant did not introduce copies of pre-August 2012 reports at the hearing, testify about the missing information contained therein, and show that he provided the Deputy General Counsel and others with copies of those reports with an explanation of why they were noncompliant at the time he made his disclosures. 1124-M-5 ID at 28, n. 32.

¶21    The appellant does not have to prove that one of the types of wrongdoing listed under section 2302(b)(8)(A) actually occurred, only that he reasonably believed his disclosure evidenced such wrongdoing. *See Chavez v. Department of Veterans Affairs,* 120 M.S.P.R. 285, ¶ 18 (2013). We find that a reasonable person in the appellant's position with knowledge of the facts known to him could reasonably conclude that the agency's actions evidenced a violation of Rule 900(b). Rule 900(b) requires, in pertinent part, that OGC's 900(b) reports "shall describe" certain details about cases that the Commission has not decided within the requisite time periods. 17 C.F.R. § 201.900(b) (2015). These details include "the procedural posture of the case," an "estimated date for conclusion of the proceeding," and other information necessary for the Commission to "reach . . . timely resolution." *Id.*

¶22    As mentioned above, both the appellant and Assistant General Counsel J.M. gave unrefuted testimony that J.M. provided the appellant with a draft 900(b) report for his signature in September 2012. 5/19/15 HT at 111-12 (testimony of the appellant); 7/1/15 HT at 95-97, 158-60 (testimony of J.M.). At that time, J.M. explained to the appellant that the Adjudications office had been following this same reporting format for years. 5/19/15 HT at 111-12 (testimony of the appellant); 7/1/15 HT at 95-97, 158-60 (testimony of J.M.). We find that the

appellant's reliance on this information was reasonable given that the appellant had only been at OGC for a couple of months and J.M. had been at the agency for about 25 years, she was the most senior of the three Assistant General Counsels in OGC, and she was the principal drafter of the 900(b) reports for years. 5/19/15 HT at 112 (testimony of the appellant); 7/1/15 HT at 87-89, 93-94 (testimony of J.M.). In his hearing testimony, the appellant identified the information he believed was missing from the September 900(b) Report. 5/19/15 HT at 111-22 (testimony of the appellant). In particular, he noted that some of OGC's target dates listed for submitting draft decisions had already passed and the report did not provide an explanation of the delay for some of the cases. *Id.* at 116-20 (testimony of the appellant). The September 2012 900(b) report, which is in the record, is missing for eight overdue cases their age and procedural posture, and has estimated completion dates for those cases that had already passed. 1124-W-1 IAF, Tab 89 at 61-64.

¶23    During an oral discussion on an unknown date in October 2012, and then in a follow-up email on October 18, 2012, to the Deputy General Counsel, the appellant disclosed his belief that OGC's 900(b) reports, both the pre-August 2012 reports and the September 2012 report on which he had just signed off, were not complying with Rule 900(b)'s reporting requirements. 5/19/15 HT at 128-29 (testimony of the appellant), Tab 89 at 36-40, 54-55. He proposed, among other solutions, that OGC submit a "supplemental Rule 900(b) report, adding extra detail (as specified in Rule 900(b)." 1224-W-1 IAF, Tab 89 at 55.

¶24    The Deputy General Counsel concurred with the appellant's assessment. On November 20, 2012, the Deputy General Counsel responded via email to the appellant's concerns, "As you suggested, I think it makes sense to prepare the supplemental 900(b) report-with sufficient information about the overdue cases to inform the Commission of their current status and the anticipated completion dates." *Id.* at 65-66. The Deputy General Counsel further acknowledged that

OGC was not updating its target dates for completing draft decisions from one report to the next, resulting in the September 2012 report reflecting target dates that had passed. 1124-W-1 IAF, May 20, 2015 Hearing Transcript (5/20/15 HT) pt. 2 at 72-73 (testimony of the Deputy General Counsel).[6] Thus, we find that the appellant has established that a reasonable person in his position with knowledge of the facts known to him in October 2012 could have concluded that the agency's actions in submitting noncompliant 900(b) reports evidenced one of the conditions set forth in 5 U.S.C. § 2302(b)(8).

¶25    As to the September 2012 and March 2013 900(b) reports, the administrative judge also found that the appellant did not prove that he reasonably believed the agency violated Rule 900(b) based on the following findings:  (1) the 900(b) reports contained the date the appeal was filed, from which the Commission could garner its age; (2) beginning in October 2012, the appellant submitted a supplemental "OGC Pending Cases" report each month to the Commission that "cured" or enabled the Commission to "reasonably gauge" the missing information in the 900(b) report, including the age of each case, the procedural posture, and the estimated completion dates for overdue cases; and (3) the "stale" completion dates in the September 2012 900(b) report constituted minor or inadvertent miscues. 1124-M-4 ID at 27-37.  The administrative judge also found that the appellant failed to prove that he reasonably believed that he disclosed a violation of gross mismanagement when on April 22, 2013, he objected to the Deputy General Counsel's instruction to delete the information related to the 7-month aspirational goal described in Rule 900(a)(1)(iii) that the appellant had included in the draft March 2013 900(b) report.  1124-M-4 ID at 32-33, 37.  He reasoned that because the appellant did not prove that he reasonably believed the 900(b) reports violated Rule 900(b), the Deputy General Counsel had discretion to reject the appellant's suggestions and proposals as a

_____

[6] The transcript of the testimony from May 20, 2015, consists of two parts, both containing the same pagination and located in the same tab of the record.  Here, we have cited to part 2 (pt. 2).

matter of policy under the circumstances. 1124-M-4 ID at 32-33. In essence, the administrative judge found that any missing information in the 900(b) reports that OGC was required to report to the Commission pursuant to Rule 900(b) was sufficiently cured by the appellant's monthly "OGC Pending Cases" reports, was a minor or inadvertent omission, or was subject to the Deputy General Counsel's discretion. For the reasons provided below, we disagree.

¶26     On review, the appellant challenges the administrative judge's conclusion that he began sending the Commissioners a supplemental "OGC Pending Cases" report beginning in October 2012. PFR File, Tab 1 at 13 n.48, 30. The appellant contends that, although he originally prepared the OGC Pending Cases report in October 2012, "the record is silent" as to when he began forwarding it to the Commissioners. *Id.* He also states that the version of the report that the administrative judge references in his decision as "dated October 1, 2012" and the version the appellant testified about at the hearing were submitted to the Chairman and the Commissioner in April 2013, and were not circulated in 2012. *Id.*; 5/20/15 HT pt. 1 at 10-11 (testimony of the appellant); 1124-M-5 ID at 14 (citing 1124-W-1 IAF, Tab 101 at 72-123). The record below contains more than one version of the appellant's OGC Pending Cases report covering the period of "Oct. 1, 2012 to the present." The reports are incomplete because they are cut off at the sides. *See, e.g.*, 1124-W-1 IAF, Tab 92 at 23-74 (submitted Apr. 30, 2013); Tab 115 at 68-104 (submitted Jan. 31, 2013). The appellant testified that the date that the report was last updated, or the date of the "snapshot," is located at the footer of the reports. 1124-W-1 IAF, 5/20/15 HT pt. 1 at 43 (testimony of the appellant). The complete version of the OGC Pending Cases report that the administrative judge cited in the initial decision was updated April 30, 2013, and therefore, we agree that the evidence does not support the administrative judge's finding that the appellant sent it to the Commission in October 2012. 1124-W-1 IAF, Tab 101 at 72-123.

¶27     Nevertheless, even if the appellant had submitted his OGC Pending Cases report in the fall of 2012, we still disagree with the administrative judge's findings that it sufficiently cures the required missing information in the 900(b) reports, or that the omissions were otherwise minor miscues or discretionary, such as to render the appellant's belief that Rule 900(b) was violated unreasonable.  First, the appellant's October 2012 OGC Pending Cases report could not have cured the missing information in the pre-August 2012 900(b) reports and September 2012 900(b) report, which predate it.  Also, the March 2013 900(b) report is missing the age and procedural posture of the cases. 1124-W-1 IAF, Tab 91 at 65-69.[7]  Although the appellant's OGC Pending Cases report provides the age and procedural posture of the cases, it does not include the estimated completion date on which the overdue cases will be submitted to the Commission.  1124-W-1 IAF, Tab 101 at 72-123.

¶28     There is no de minimus exception under 5 U.S.C. § 2302(b)(8) for disclosures involving a violation of regulation.  *Fisher v. Environmental Protection Agency*, 108 M.S.P.R. 296, ¶ 9 (2008); *see El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 9 (2015) (concluding that an appellant's alleged disclosure that an agency exceeded a regulation that required that it reimburse him for travel within 30 days was a nonfrivolous allegation of a violation of law, rule, or regulation), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016).

---

[7] The March 2013 900(b) report is erroneously titled "Pending Cases as of 11/30/2012," instead of "Pending Cases as of 3/31/2013."  1124-W-1 IAF, Tab 91 at 66.  Also, it is not entirely clear from the record which version of the March 2013 900(b) report was ultimately submitted to the Commission.  On April 22, 2013, after meeting with the Deputy General Counsel and revising the report per his instructions, the appellant emailed the revised draft to J.M.  *Id.* at 65.  Then, on April 24, 2013, the appellant and the Deputy General Counsel met again to discuss the "aggressive" estimated completion dates in the April 22nd draft.  *Id.* at 141.  In anticipation of that meeting, the appellant attached the March 2013 900(b) report with some added written commentary directed to the Deputy General Counsel as to why he felt the estimated completion dates were realistic.  *Id.* at 141-46.  In any event, for the reasons explained below, we find that neither version of this March 2013 900(b) report contains all the required information in Rule 900(b).

Therefore, the administrative judge erred in suggesting that disclosures of violations of Rule 900(b) were not protected because the Commission could extrapolate from the 900(b) reports that certain cases not identified as delayed were late, and that providing dates that had already passed as target dates were "inadvertent miscues."

¶29      Because we find that the appellant established by preponderant evidence that he made protected disclosures that the agency's pre-August 2012, September 2012, and March 2013 900(b) reports violated Rule 900(b), we need not address whether he reasonably believed that this disclosure evidenced gross mismanagement. PFR File, Tab 1 at 17, 31-33; *Mudd,* 120 M.S.P.R. 365, ¶ 5 (stating that a protected whistleblowing disclosure is a disclosure of a matter that a reasonable person in the appellant's position would believe evidenced any one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8)).

<u>The appellant met his burden to prove that his disclosure was a contributing factor in his employment termination.</u>

¶30      Because the administrative judge found that the appellant's disclosures of Rule 900(b) violations were not protected, he did not reach the issue of whether the appellant met his burden to prove that his alleged disclosures were a contributing factor in his removal. We find that he did. One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which he submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures or activity satisfies the timing portion of the knowledge/timing test. *Id.* Because the appellant's disclosures, which began in October 2012 and continued into early 2013, were made to the Deputy General Counsel, who made

the decision to terminate the appellant's employment in May 2013, the appellant has proved contributing factor under the knowledge/timing test.

<u>This case must be remanded for a determination of whether the agency proved by clear and convincing evidence that it would have terminated the appellant in the absence of his whistleblowing disclosures.</u>

¶31 The appellant alleges that the Deputy General Counsel's stated reasons for terminating the appellant were "pretextual." PFR File, Tab 1 at 25. Because the administrative judge found that the appellant did not make a protected disclosure, he did not reach this issue. 1124-M-5 ID at 37. If, as here, an appellant proves that his protected disclosure was a contributing factor in the personnel action taken against him, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e); *see Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

¶32 In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider all the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Once an appellant establishes his prima facie case, the determination as to whether the agency met its burden by clear and convincing evidence requires additional factual findings and may require credibility determinations. *Gonzales v. Department of Transportation*, 109 M.S.P.R. 250, ¶¶ 21-22 (2008). Such findings are properly made in the first instance by the administrative judge, who was able to observe the demeanor of witnesses at hearing. *Id.*, ¶ 22. We therefore remand this appeal to the

administrative judge for a determination of whether the agency made the required showing by clear and convincing evidence. *Id.* Because the appellant disputes the agency's reasons in support of his removal, and the Board in its interlocutory decision assigned this appeal to a different administrative judge than the one who held the hearing, on remand the administrative judge should accept evidence and argument and hold a supplemental hearing on the limited issue of whether the agency met its burden. *See Lin v. Department of the Air Force*, 2023 MSPB 2, ¶ 24 (holding that when there is conflicting testimony on a material issue, and a new administrative judge will decide the case, the testimony should be heard again by the new administrative judge to permit her to make credibility determinations based on witness demeanor).

¶33    We recognize that many years have passed during the processing of this appeal, and the parties engaged in extensive discovery and had a 3-day hearing, and therefore, the record below is voluminous. Nevertheless, the appellant has consistently objected to the first administrative judge's rulings on discovery motions and has sought to engage in additional discovery. *See, e.g.*, 1124-W-1 PFR File, Tab 5 at 27-28, 38-40, 1124-M-4 AF, Tab 31 at 5-8; *Flynn*, 877 F.3d at 208-09. The administrative judge declined those requests on the basis that the Fourth Circuit's decision indicated additional evidence may only be needed if the appellant established his prima facie case regarding his Rule 900(b) disclosures. 1124-M-4 AF, Tab 37 at 5-6; *Flynn*, 877 F.3d at 208-09. We make no finding here as to whether the first administrative judge abused his considerable discretion in rulings on discovery matters; however, on remand, if the administrative judge determines that any of the excluded discovery is relevant to adjudicating the limited issue of whether the agency met its burden by clear and convincing evidence, he may allow it.

¶34    Lastly, the appellant alleges that the administrative judge previously assigned to the appeal abused his discretion in excluding several of his hearing exhibits without providing a "meaningful analysis" as to why they were

irrelevant. PFR File, Tab 1 at 25-28. Specifically, he alleges that the administrative judge improperly excluded the Rule 900(b) report OGC filed in March 2012, documents discussing Rule 900(b)'s administrative history, and excerpts of J.M.'s deposition testimony. *Id.* at 25-26. In light of this remand order, we find that any error by the administrative judge in excluding the appellant's hearing exhibits was not harmful. *See* 5 C.F.R. § 1201.115(c) (providing that an administrative judge's abuse of discretion warrants review only if such error affected the outcome of the case). Moreover, the appellant can request to submit documents relevant to the *Carr* factors on remand.[8]

## ORDER

¶35     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:      *Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.

---

[8] Because we are granting the appellant's petition for review and remanding the appeal, we deny as unnecessary the appellant's motion to exceed the word limit and motion for leave to request a status report or a decision on his petition for review. PFR File, Tab 2, 9. 5 C.F.R. § 1201.114(a)(5).